565 P.2d 518

**ARIZONA BOARD OF REGENTS, a body corporate, and Hartford Steam Boiler Inspection and Insurance Company, a Connecticut Corporation, Appellants,**

v.

**ARIZONA YORK REFRIGERATION COMPANY, an Arizona Corporation, Appellee.**

No. 12668.

Supreme Court of Arizona, In Division.

May 25, 1977.

Shimmel, Hill, Bishop & Gruender by Rouland W. Hill, Phoenix, for appellants.

Jennings, Strouss & Salmon by William F. Haug and F. William Sheppard, Phoenix, for appellee.

HOLOHAN, Justice.

Plaintiff Arizona York Refrigeration Company (York) filed an action on July 25, 1973, against the Arizona Board of Regents and Hartford Steam Boiler Inspection and Insurance Company (Hartford), defendants, to recover the reasonable value of goods and services furnished in the repair of a boiler at Northern Arizona University (NAU).

The case was tried to the court who found in favor of York against both the Board of Regents and Hartford for $14,-584.22, the reasonable value of the goods and services expended in repairing NAU's boiler, plus York's costs. The defendants filed a motion for a new trial and a motion to amend the findings of fact and judgment.

On January 22, 1975, the court entered an order denying the motion for a new trial and amending its findings and judgment. The defendants have appealed both the judgment and the rulings made on their post-trial motions.

We took jurisdiction pursuant to Rule 47(e)(5), Rules of the Supreme Court, 17A A.R.S., and consolidated the issues raised on appeal:

1. Did York obtain the consent of the state to sue?

2. Did Hartford's conduct give rise to an obligation to pay for the additional repairs?

3. Should York's judgment be limited to the amount contained in the original agreement?

4. Does the evidence support the trial court's findings of fact?

In October, 1971, York installed at NAU a steam boiler manufactured by the Erie City Energy Division of Zurn Industries (Erie). On January 9, 1972, a plant engineer at NAU discovered a leak. NAU contacted its consulting engineers who in turn notified Erie.

Representatives of Erie and York inspected the boiler and found extensive damage. NAU was advised to have its insurance carrier, Hartford, inspect the boiler. Hartford's inspector, Cor Vanderfange, did so and acknowledged that the loss was covered by Hartford's policy. He blamed the failure on NAU's operation of the boiler and directed the York representative to make certain repairs.

Based on the repair method outlined by Hartford, York drew up a proposal. It would make the directed repairs for $8,437. NAU accepted this proposal and requested that York proceed with the repairs as soon as possible because of the severe winter weather.

York subcontracted the job to the Capitol Boiler Company (Capitol) and Erie. Capitol's workers arrived at the jobsite on February 7, 1972. Erie's representative, W. V. Winchek, an experienced welder and boiler-maker, arrived the same day.

On February 11, 1972, Vanderfange spoke with Winchek on the telephone. Winchek told him that the directed method of repair was inadequate and that additional work would be necessary to put the boiler back into service. Vanderfange told Winchek to proceed with the additional work and do whatever was necessary to repair the boiler. Winchek told the York representative of his conversation with Vanderfange. Relying on the information furnished by Winchek the York representative authorized the additional work.

The repairs, including the additional work, were completed satisfactorily. On April 7, 1972, York submitted an invoice for $14,584.22 to NAU, which turned it over to Hartford. Hartford gave NAU a draft for $8,437, which NAU tendered to York.

York refused the tender and instituted suit on March 15, 1973. On July 12, the action was dismissed and York was granted 30 days to file an amended complaint. On July 16, 1973, York presented its verified claim to the Regents and the claim was rejected. On July 25, 1973, an amended complaint was filed. The judgment being appealed is based upon the amended complaint.

## CONSENT TO SUE

■ Suits against the state may be brought only in the manner prescribed by the legislature. Art. 4, Part 2, § 18, Arizona Constitution. Suits against the state are governed by A.R.S. § 12–821 et seq. As a prerequisite for bringing suit, the plaintiff must present a "claim" against the state.

A.R.S. § 12–821. The manner of presenting claims is specified in A.R.S. § 35–181.01 et seq. The defendants contend that the plaintiff failed to comply with the statutes both in the manner in which it brought its claim and in the manner in which it sued the state.

The defendants argue that the plaintiff's claim was untimely filed because A.R.S. § 35–190 forbade approval of any expenditure after the close of the fiscal year. Defendants point out that the plaintiff did not file its claim until well after the close of the fiscal year in which the repairs were made.

The plaintiff answers that A.R.S. § 35–190 applies only to appropriated funds.

"A. Except as provided in § 35–191 no officer or other agency of the state shall, after the close of any fiscal year, incur or order or approve the incurring of any obligation or expenditure under *any appropriation* made by the legislature for such fiscal year, and no expenditure shall be made from or be charged to *any appropriation* made by the legislature for any fiscal year which has expired at the time the obligation for such expenditure was incurred." A.R.S. § 35–190. (Emphasis supplied.)

The plaintiff argues that the funds in dispute are the proceeds of an insurance policy.

The plaintiff's argument is fallacious. Even if Hartford would agree to furnish the funds to pay for the repairs, the state would remain the primary obligor. Moreover, judgment below was entered against the Board of Regents. If that judgment is affirmed the state will have been successfully sued by a plaintiff who did not comply with the statutory provisions for bringing suit.

We must conclude that because York's claim was untimely filed its suit against the state was improperly considered. The judgment against the Board of Regents is reversed.

## HARTFORD'S OBLIGATION

The court below concluded that Hartford, by reason of its conduct in directing the manner of repair, authorizing the additional repairs and accepting responsibility for payment for the repairs, agreed to pay York the reasonable value of the repairs. The defendants contend that the facts of this case do not support the finding of a promise on the part of Hartford to pay the plaintiff anything.

■ American courts have recognized an implied contract as a legally enforceable contractual agreement. Restatement of Contracts, § 5 Comment a; 3 Corbin on Contracts, § 562 (1960). An implied contract is one not created or evidenced by explicit agreement, but inferred by law as a matter of reason and justice from the acts and conduct of the parties and the circumstances surrounding their transaction. *Alexander v. O'Neil*, 77 Ariz. 91, 267 P.2d 730 (1954). We must determine if the conduct of the parties and the circumstances surrounding their transaction were such that as a matter of reason and justice a contract must be implied.

■ The record shows that Hartford's inspector, Cor Vanderfange, had specified the manner in which the repairs were to be made. Based on these specifications, York made its original offer of $8,437. When Erie's representative informed Vanderfange that additional work consisting of welding slugs to the boiler tubes to hold them in proper alignment was needed, the Hartford inspector told him to go ahead. Only after being informed of this did York authorize the additional work.

From these circumstances we infer that a contract was created. The figure of $8,437 covered only the original repairs. Hartford was told exactly what additional work was required. By agreeing to additional repairs, which were over and above what the initial agreement called for, Hartford obligated itself to pay for the reasonable value of those additional repairs.

## AMOUNT OWED

■ The defendants contend that plaintiff's recovery should be limited to $8,437, the amount for which it agreed to perform the repairs originally directed by Hartford. Defendants do not argue that the reasonable value of all the work done did not exceed $8,437, but only that the original amount should cover any and all repairs made. Since the obligation to pay for the additional work is based on a contract existing separate and apart from the original agreement covering the work originally directed, the defendants' contention is without merit. Plaintiff is entitled to recover the reasonable value of all the work which it did.

The trial court awarded York $14,584.22, the amount of York's original invoice. The defendants do not challenge the itemization therein or values ascribed to the individual items. Having found their legal challenge to be without merit, we accept the figure of $14,584.22 as the reasonable value of all the goods and services furnished by the plaintiff in repairing the boiler.

## SUFFICIENCY OF EVIDENCE

■ The defendants' final contention is that a number of the trial court's findings of fact are either contrary to the evidence or unsupported by the evidence. Where findings of fact have been made, they are binding on the appellate court unless clearly contrary to the evidence. *Vogel v. Hohenstein*, 112 Ariz. 164, 540 P.2d 130 (1975). We have reviewed the findings of the trial court and find them to be supported by the evidence.

Judgment affirmed in part and reversed in part.

HAYS and GORDON, JJ., concur.