712 P.2d 934

**Judith (Lee) CARROLL,**
**Plaintiff/Appellee,**

v.

**Paul T. LEE, Defendant/Appellant.**

**No. 2 CA–CIV 5283.**

Court of Appeals of Arizona,
Division 2, Department B.

June 24, 1985.

Leighton H. Rockafellow, Tucson, for plaintiff/appellee.

Aboud & Aboud, P.C. by Michael J. Aboud, Tucson, for defendant/appellant.

## OPINION

HATHAWAY, Presiding Judge.

This is an appeal of an amended judgment on a complaint for partition of certain real and personal property. The parties, Judith Carroll and Paul Lee, had lived together since the late 1960s, holding themselves out as man and wife and using the same last name (Lee), although they had never married nor seriously contemplated marriage. They filed several joint income tax returns as a married couple. For most of their 14 years together, Judy and Paul lived in Arizona, moving to Ajo around 1973. They lived together until the summer of 1982. Appellant Paul Lee spent almost all his time in his business as a mechanic, including building antique cars from scrap parts. Judith Carroll kept house and was self-employed between 1978 or 1979 and 1982 in a photography business, most of the income of which went back into the business. Judith Carroll had a separate bank account for her business. She was the only signatory. Judith and Paul had a joint checking account, which Judith opened in 1978, but which Paul never utilized, since he preferred to deal in cash in his business. Judith paid the household expenses out of this joint account, which was presumably fed by the earnings of Paul Lee, since Judith made "very, very little money" from the photography business and in any case put most of the proceeds from "Photos by Judy" into her separate business account. "Some of it [the money from the photography business] was spent on household, whatever." Appellant testified he never saw any money from the photo business.

During their years together Paul Lee bought several parcels of real property and some antique cars in various states of disrepair, which he put into his and Judy's names as husband and wife, sometimes as joint tenants with right of survivorship. These items of property, along with several

items of household furnishings, are the subject of the partition action brought by Judy. It is undisputed that these purchases were financed exclusively from Paul's earnings from his business. Both parties agree that they began their relationship with virtually no personal or real property. Almost from the time the two parties arrived in Ajo, they began going their separate ways, although they continued to maintain a common household.

On the basis of these facts, the trial court awarded each party a one-half interest in all that had been acquired, with only limited exceptions. The court found,

> "A contract existed and exists between the parties. While said contract is not in writing, the Court finds that the contract was assiduously and scrupulously adhered to by both parties in the repeated acquisition of properties and the repeated taking of title to properties in both names, pursuant to the contract. The Court further finds that gifts to and from each, to and from the other, pursuant to this same silent contract, of time, money, labor, sharing of duties, and the like constituted an equal sharing of the cost of the acquisitions of the various properties."

The sole issue on appeal is whether the evidence supports the existence of a legally enforceable agreement which would justify the awarding of essentially equal shares, when the parties were non-marital cohabitants. We agree with appellee that the key to deciding this issue is *Cook v. Cook*, 142 Ariz. 573, 691 P.2d 664 (1984). The type of agreement approved in *Cook* was one between unmarried cohabitants "to pool income, acquire assets and share in the accumulations." Mutual promises of "share and share alike" with respect to economics would seem to have been the consideration deemed proper in that cohabitant relationship. "A promise to contribute funds to a 'pool' of income is proper consideration." *Cook v. Cook*, 142 Ariz. at 579, 691 P.2d at 670. Such an agreement and the mutual promises which make it up can be separated from any otherwise illegal arrangement

(see A.R.S. § 13–1409) and it thus becomes enforceable. But no evidence, in words or conduct, suggests *mutual* promises to contribute funds to a *pool* in the instant case. On the contrary, the implied agreement specifically described and delimited by the conduct of the parties in this case was an exchange of unlike services: one cohabitant's homemaking services for the other's monetary support. Judith Carroll described the agreement:

> "Q. All right. What type of an arrangement, if any, did you and Paul discuss about what he expected from your relationship in terms of your contribution?
> A. *We didn't really discuss it. It just was there. He went to work. I stayed home and kept the house* and, mostly because that's what he wanted me to do.
> Q. He told you that's what he wanted you to do; didn't he?
> A. Oh, yeah.
> Q. And that, that included all the things that I went through with him, such as taking care of the laundry—
> A. Uh-huh, of course.
> Q. —doing the dishes—
> A. Yes.
> Q. —cleaning the house—
> A. Yes."

(Emphasis added)

Judith Carroll's contribution to Paul Lee's business was minimal and incidental, except for a few hours of bookkeeping a month. Judy agreed that virtually everything acquired was exclusively the product of Paul's efforts in his garage mechanic's business. When Judith Carroll earned income through her photography business, a business made possible initially through acknowledged gifts from Paul Lee, she opened a separate bank account and returned most of the receipts to the business. There is no evidence of an express or implied agreement to share or pool income equally, merely an agreement to exchange unlike services.

In *Cook*, the Arizona supreme court specifically declined reaching the issue of

"whether an agreement would be enforceable in Arizona if supported only by the consideration of what is commonly thought of as performance of cohabitants' marital functions...." We need not decide that issue in this case because we do not have the mutual agreement to pool assets and share accumulations found in *Cook* and *Marvin v. Marvin*, 18 Cal.3d 660, 134 Cal. Rptr. 815, 557 P.2d 106 (1976). Rather we have a simple agreement to exchange unlike services: he went to work, I stayed home. There is no evidence of an agreement express or implied which could be read: he went to work, I stayed home, *and* we agreed to pool our assets and share our accumulations. Without the latter element in the agreement we do not approach the *Cook v. Cook*, supra, situation.

█ Appellee has repeatedly argued that the deeds at issue "speak for themselves." But appellee fails to cite or discuss *Becchelli v. Becchelli*, 109 Ariz. 229, 508 P.2d 59 (1973), relied upon by appellant. In *Becchelli*, our supreme court stated:

> "It is the general rule of law [in non-marital transactions] that where property is paid for by one and taken in the name of another or jointly in both their names, a presumption arises that the property was taken in trust for the benefit of the one paying for the property. But as between husband and wife, the presumption as to real property is to the contrary. The law presumes a gift from the husband...."

109 Ariz. at 232, 508 P.2d at 62.

Since Judith Carroll has acknowledged that all property was acquired with Paul Lee's earnings, the question of who paid for the property at issue is settled. There being no common purpose to share income, the presumption of a trust in Paul's favor is not overcome. Even Paul's own statement that he wanted Judy to be a "co-owner" fails to overcome this presumption, since he explained his use of the term co-owner to be limited to a testamentary ownership interest. Judith Carroll agreed that "at no time did Skip [Paul Lee] ever say I'm giving you an interest in this particular piece of property...." Moreover, Judith Carroll specifically disavowed any interest in Paul Lee's "shop," yet the trial court awarded her a half interest in that property. To presume a gift from the one who paid for the property, real or personal, would create a form of community property unsanctioned by legislation.

We hold that the trial court erred in finding a contract existed between the parties which would support an equal ownership interest in the properties titled in both names. We reverse and remand for a judgment consistent with this opinion.

LACAGNINA and LIVERMORE, JJ., concur.