712 P.2d 923

**Judith (Lee) CARROLL, Appellee,**

v.

**Paul T. LEE, Appellant.**

**No. 18382–PR.**

Supreme Court of Arizona,
En Banc.

Jan. 6, 1986.

Reconsideration Denied Feb. 12, 1986.

Leighton Rockafellow, Tucson, for appellee.

Aboud & Aboud, P.C., Tucson, by Michael Aboud, for appellant.

GORDON, Vice Chief Justice.

Judith Carroll (Judy) has petitioned this Court for review of a decision of the court of appeals reversing the trial court's judgment granting her request of partition of certain real and personal property. We

have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3) and Rule 23, Ariz.R.Civ. App.P.

Judith Carroll, aka Judith Lee cohabited with Paul T. Lee for fourteen years ultimately settling in Ajo, Arizona. They went their separate ways in 1982. The couple did not marry nor ever seriously contemplate marriage. However, they did hold themselves out as husband and wife and Judy assumed Lee as her surname. Little personal property was owned by either party prior to the relationship and neither owned any real property. Throughout the course of the relationship the couple jointly acquired three parcels of real estate, several antique or restored automobiles, a mobile home and various personal property. The parties filed joint tax returns as husband and wife several times.

Paul is a mechanic by trade and operates an automobile repair shop in Ajo on a parcel of land acquired during the relationship. He supplied the vast majority of the money used to sustain the couple, while Judy kept the house (cleaning, cooking, laundry, working in the yard). Occasionally Judy helped Paul at the shop with billing and bookkeeping. The couple had a joint checking account out of which Judy paid the household bills. Paul did not utilize the account, preferring to deal in cash or money orders in his business.

The real property was titled to the couple in one of three ways. Title was held either, 1) as joint tenants with the right of survivorship, 2) as husband and wife, or 3) as husband and wife as joint tenants with the right of survivorship. The various automobiles and mobile home were all titled to Paul T. Lee or Judith E. Lee.

Judy was self-employed for approximately five years from 1978 to 1982 as a photographer/dark room technician. She made little money; most of it went back into the business. However, some was spent on the household. "Photos by Judy" had a separate business account with Judy the only signatory. After the parties "split up" Judy filed a partition action pursuant to A.R.S. § 12–1211.

A bench trial was held and both parties testified. The trial court, in an amended judgment, essentially awarded each party a one-half interest in the real and personal property that was acquired by the couple during their relationship. The trial court found the following:

"A contract existed and exists between the parties. While said contract is not in writing, the Court finds that the contract was assiduously and scrupulously adhered to by both parties in the repeated acquisition of properties and the repeated taking of title to properties in both names, pursuant to the contract. The Court further finds that gifts to and from each, to and from the other, pursuant to this same silent contract, of time, money, labor, sharing of duties, and the like constituted an equal sharing of the cost of the acquisitions of the various properties."

Paul appealed the decision of the trial court. The court of appeals reversed the award primarily on its interpretation of *Cook v. Cook*, 142 Ariz. 573, 691 P.2d 664 (1984). *See Carroll v. Lee*, 148 Ariz. 21, 712 P.2d 934 (1985). The court found that no valid agreement existed and that Judy held the property in a resulting trust for Paul's benefit. We believe the court of appeals construed the holding in *Cook* too narrowly and relied erroneously on *Becchelli v. Becchelli*, 109 Ariz. 229, 508 P.2d 59 (1973).

In *Cook v. Cook, supra*, we exhaustively reviewed agreements between non-married cohabitants. The agreement approved of in *Cook* was one between unmarried cohabitants to pool income, acquire assets and share in the accumulations. 142 Ariz. at 576, 691 P.2d at 667. We compiled basic concepts of contract law:

"The *sine qua non* of any contract is the exchange of promises. Restatement (Second) of Contracts § 1 (1981). From this exchange flows the obligation of one party to another. 1 Williston on Contracts § 1 at 2 (1957). Although it is most apparent that two parties have exchanged promises when their words ex-

press a spoken or written statement of promissory intention, mutual promises need not be express in order to create an enforceable contract. Restatement (Second) of Contracts § 4. Indeed, a promise 'may be inferred wholly or partly from conduct,' *id.*, and 'there is no distinction in the effect of the promise whether it is expressed in writing, or orally, or in acts, or partly in one of these ways and partly in others.' *Id.* § 19, comment *a. See also Arizona Board of Regents v. Arizona York Refrigeration Co.*, 115 Ariz. 338, 341, 565 P.2d 518, 521 (1977). Thus, two parties may by their course of conduct express their agreement, though no words are ever spoken. From their conduct alone the finder of fact can determine the existence of an agreement. Restatement (Second) of Contracts § 4; 1 A. Corbin, Contracts, § 9 at 20–21 (1963). *See also Malcoff v. Coyier*, 14 Ariz.App. 524, 484 P.2d 1053 (1971)."

142 Ariz. at 576, 691 P.2d at 667.

The court of appeals found that

"... no evidence, in words or conduct, suggests *mutual* promises to contribute funds to a *pool* in the instant case. On the contrary, the implied agreement specifically described and delimited by the conduct of the parties in this case was an exchange of unlike services: one cohabitant's homemaking services for the other's monetary support."

712 P.2d at 935. (emphasis in original). Further the court stated,

"There is no evidence of an agreement express or implied which could be read: he went to work, I stayed home, *and* we agreed to pool our assets and share our accumulations. Without the later element in the agreement we do not approach the *Cook v. Cook*, supra, situation."

at 935–936. (emphasis in original).

We disagree with the above reasoning and now reach the unanswered question from *Cook* as to whether an agreement between unmarried cohabitants with homemaking services severable from a meretricious relationship as consideration can stand. In Arizona we recognize implied contracts, *Arizona Bd. of Regents v. York Refrigeration Co.*, 115 Ariz. 338, 341, 565 P.2d 518, 521 (1977), and there is no difference in legal effect between an express contract and an implied contract. *Swingle v. Myerson*, 19 Ariz.App. 607, 609, 509 P.2d 738, 740 (1973). An implied contract is one not created or evidenced by explicit agreement, but inferred by the law as a matter of reason and justice from the acts and conduct of the parties and circumstances surrounding their transaction. *Alexander v. O'Neil*, 77 Ariz. 91, 98, 267 P.2d 730, 734 (1954). Furthermore, in this state monetary consideration is not always required as consideration. Adequate consideration consists of a benefit to the promisor and a detriment to the promisee. *Cavanagh v. Kelly*, 80 Ariz. 361, 363, 297 P.2d 1102, 1103 (1956); *Mack v. Coker*, 22 Ariz. App. 105, 107, 523 P.2d 1342, 1344 (1974). Clearly a promise for a promise constitutes adequate consideration, *K–Line Builders Inc. v. First Federal Savings and Loan Ass'n*, 139 Ariz. 209, 212, 677 P.2d 1317, 1320 (App.1983), and consideration need not be of like or identical value. *Taylor v. Kingman Feldspar Co.*, 41 Ariz. 376, 381, 18 P.2d 649, 651 (1933).

Mutuality of obligation is a requirement for a valid contract; however, mutuality is absent when only one of the contracting parties is bound to perform. *Keck v. Brookfield*, 2 Ariz.App. 424, 427, 409 P.2d 583, 586 (1965). When there are mutual promises between parties, as implied here, it is not necessary in order to render a particular promise by one party binding on the other party that there be a special promise on the part of the other party directed to that particular obligation. *Id.; Taylor v. Kingman Feldspar Co., supra*, 41 Ariz. at 381, 18 P.2d at 651 (1933). Furthermore, it is of no consequence that the parties exchanged "unlike services". Any performance which is bargained for is consideration, Restatement (Second) of Contracts, § 72, and courts do not ordinarily inquire into the adequacy of considera-

tion. *Id.;* Restatement (Second) of Contracts, § 78, comment a.

Paul received the cooking, cleaning and household chores he bargained for while Judy received monetary support. Together they were able to acquire property through their joint efforts. Clearly Judy's homemaking services can be valued and constituted adequate consideration for the couple's implied agreement. *See* Bruch, "Property Rights of De Facto Spouse Including Thoughts on The Value of Homemakers' Services," 10 Family Law Q. 101 (1976). This is not a case of gross inadequacy of consideration on either party's part. "To the extent that the apportionment of productive energy and product in the economy are left to private action, the parties to transactions are free to fix their own evaluations". Restatement (Second) of Contracts, § 79, comment c. In the instant case each party gave up something of economic value and received something of economic value. *See* Bruch, *supra*, at 122–23 ("... it is clear that if services which are granted by one party to another have economic value so that the second person need not expend money to secure them elsewhere, the financial base of the second party is enhanced").

■ We agree with the court in *Marvin v. Marvin*, 18 Cal.3d 660, 134 Cal.Rptr. 815, 557 P.2d 106 (1976) in that "homemaking", severable from the meretricious relationship can support an implied agreement as between two parties. It is important to note that Judy does not claim the parties had a "Marvin" agreement. In *Marvin*, *supra*, Michelle Triola Marvin alleged an oral agreement under which the parties would pool property and earnings while holding themselves out as husband and wife; she would provide household services and he would support her for life. Judy has only requested partition to property which is jointly titled to her and did not request, for example, certain automobiles titled to Paul separately or Paul's repair shop (a subject to later be addressed). This situation is not nearly as potentially expansive as a case like *Marvin*.

■ We believe Judy proved the property requested to be partitioned was acquired through joint common effort and for a common purpose. It is not necessary for her to prove that she produced by her labor a part of the very money used to purchase the property. *See* Bruch, *supra*, at 123 n. 81 and cases cited therein. The parties had an implied partnership or joint enterprise agreement at the very least based on the facts and circumstances presented. Recovery for Judy should be allowed in accordance with these implied expectations. Paul's relevant testimony is as follows:

"Q Did you have a preference during your relationship, Paul, as to whether or not Judy should work or stay at home?
A Yes.
Q What was your preference?
A I preferred that she stay home.
Q All right. You wanted her to stay at home so that you had a nice home environment, meals were prepared on time—
A Yes.
Q —clothing was washed and cleaned and ready; correct?
A Yes.
Q The yard was nice; correct?
A Yes.
Q Dishes were washed?
A Yes.
Q Did she do all of those things in the early years, as far as the yardwork—
A She kept, kept the home nice.
Q She kept the home nice up until the time you split up; didn't she?
A Yes.
Q That included washing all of your clothes—
A Yes.
Q —preparing all of your meals?
A Well, when she was there.
Q When wasn't she there?
A Trips out of, of town.
Q How many trips did she take out of town annually?
A It depended on her business.
Q Talking about her photography business?

A Yes.

Q It's true, is it not, Paul, the majority of the time Judy stayed home and took care of that home—

A Yes.

Q —in the manner that I just went through; correct?

A Yes.

. . . .

Q Did you ever intend that she be an owner with you at that time, at the time that you were acquiring these properties that she be an owner of those properties at that time?

A You mean a co-owner?

Q Yes.

A *I suppose at the time I had planned it that way.* (emphasis added)

Q For her to be an equal, co-owner, or a co-owner with you at that particular moment, or at some time in the event that anything should happen to you?

A Mostly it was in case anything happened to me.

Q Is that what you told her?

A Yes.

. . . .

Q Do you recall Mr. Aboud asking you that question about what your intention was, whether she would be a co-owner of that property at the time you took title to it?

A Yes, sir.

Q Do you recall pausing for quite a while before you answered?

A Yes, sir.

Q Wasn't your answer I guess at the time I did?

A At the time.

Q You've since changed your mind—

A Yes.

. . . .

Q But she did open up a joint account—

A. Yes.

Q —for the two of you; correct?

A Yes.

Q She paid the household bills out of that account?

A Yes.

Q And you really have no quarrel with the way that she took care of the home as you wanted her to; didn't you?

A No, sir.

Q *That enabled you to work at your business and earn income* —

A Yes."

(emphasis added)

Judy's relevant testimony is as follows:

"Q All right. What type of an arrangement, if any, did you and Paul discuss about what he expected from your relationship in terms of your contribution?

A We didn't really discuss it. *It just was there.* He went to work. I stayed home and kept the house and, mostly because that's what he wanted me to do.

Q He told you that's what he wanted you to do; didn't he?

A Oh, yeah.

Q And that, that included all the things that I went through with him, such as taking care of the laundry—

A Uh-huh, of course.

Q —doing the dishes—

A Yes.

Q —cleaning the house—

A Yes.

. . . .

Q Judy, were you ever paid for the services you provided Paul: the bookkeeping and the housekeeping, and yardwork, the—

A No, I didn't expect it. That was part of my job as his mate, I felt."

(emphasis added)

There was evidence from which the trial court could find the existence of an agreement for property to be acquired and owned jointly, as such was the method in which Paul took title in both the real and personal property. A reviewing court should not set aside the findings of the trial court unless such findings are clearly erroneous. *State ex rel. LaSota v. Arizo-*

na *Licensed Beverage Ass'n,* 128 Ariz. 515, 519, 627 P.2d 666, 670 (1981).

The finding of an agreement severable from a meretricious relationship is not so remarkable or a major change in the law. This was recognized in *Cook v. Cook, supra.* "The agreement ... would be perfectly enforceable if made between parent and child, brother and sister, friend and friend or any other parties in a cohabitant relationship. (citation omitted) The agreement would be enforceable if the parties had not lived together at all." 142 Ariz. at 577, 691 P.2d at 668. *See also, Fernandez v. Garza,* 88 Ariz. 214, 354 P.2d 260 (1960); *Stevens v. Anderson,* 75 Ariz. 331, 256 P.2d 712 (1953); *Garza v. Fernandez,* 74 Ariz. 312, 248 P.2d 869 (1952); *Kinnison v. Kinnison,* 627 P.2d 594 (Wyo.1981); *Tyranski v. Piggins,* 44 Mich.App. 570, 205 N.W.2d 595 (1973); 3 ALR 4th 13 (1981).

The court of appeals found an agreement to exchange unlike services, but did not uphold the agreement based essentially on a failure of adequate consideration. Since we find a valid implied contract to combine efforts and jointly accumulate certain property we need not address the resulting trust theory of *Becchelli v. Becchelli, supra,* relied upon by the court of appeals. From the parties' words and actions the trial court could have found no resulting trust was intended. We believe there was sufficient evidence to justify the trial court's finding that at the time the property was acquired Paul intended joint ownership, even though he may have since changed his mind.

 This opinion does not discourage or shake the foundation of marriage in this state. Enforcement of the agreement is a logical extension of *Cook* and does not contravene public policy. This Court recognizes that community property rights derive solely from the marital relationship, A.R.S. § 25–211; *Porter v. Porter,* 67 Ariz. 273, 195 P.2d 132 (1948), and the law will not give non-marital cohabiting parties the benefit of community property. *Cook v. Cook, supra.* Community property is defined by A.R.S. § 25–211 as follows:

"all property acquired by either husband or wife during marriage, except that which is acquired by gift, devise or descent ..."

 There is a strong legal presumption that all property acquired during marriage is community property. The spouse claiming particular property as separate must prove the separate nature by "clear and convincing" or nearly conclusive evidence. *Porter v. Porter,* 101 Ariz. 131, 416 P.2d 564 (1966). The presumption applies to property acquired during marriage even though title is taken in the name of only one spouse. *Davis v. Davis,* 9 Ariz.App. 49, 449 P.2d 66 (1969). Judy did not have the benefit of the marital presumption. She had to sustain a high burden of producing evidence in order to establish the agreement. Since Judy was a co-owner of the property under a contract theory, she had the right pursuant to A.R.S. § 12–1211 to seek partition and divide the jointly owned assets. However, the award to Judy of any interest in the shop appears inconsistent with the parties' intentions. Judy made no claim to the shop and disavowed any interest in it during the proceedings.

We therefore vacate the opinion of the court of appeals and remand the case to the trial court for a redistribution of the property not inconsistent with this opinion.

HOLOHAN, C.J., and HAYS, CAMERON and FELDMAN, JJ., concur.