928 P.2d 683

**KEITH EQUIPMENT COMPANY, an Arizona corporation, Plaintiff/Appellee,**

v.

**CASA GRANDE COTTON FINANCE COMPANY, an Arizona corporation, Defendant/Appellant.**

**No. 2 CA–CV 95–0163.**

Court of Appeals of Arizona, Division 2, Department B.

May 31, 1996.

Review Denied Dec. 17, 1996.

Wright, Ray & Maisto, P.C. by George S. Wright, Kevin D. Ray, Joseph Maisto and

Wade F. Waldrip, Phoenix, for Plaintiff/Appellee.

Norling, Perry, Pierson & Kolsrud, P.L.C. by Mark S. Sifferman, Phoenix, for Defendant/Appellant.

## OPINION

ESPINOSA, Presiding Judge.

Appellant Casa Grande Cotton Finance Company (Casa Grande) appeals from a jury award in favor of appellee Keith Equipment Company (KEC) on a breach of contract claim. Casa Grande raises numerous issues, among them that the trial court erred in admitting course of dealing evidence to establish the existence of a contract. Because we agree the admission of that evidence was prejudicial error, we reverse and remand for further proceedings.

### Factual and Procedural Background

Casa Grande provides crop financing to cotton farmers for growing, harvesting and ginning their crops. In 1990, Casa Grande agreed to lend $1,018,193 to Estrella Partnership Farms (Estrella), including $78,606 for crop picking expenses. The Estrella partners executed a promissory note and security lien on the 1990 crop and its proceeds in favor of Casa Grande. The partners were Joe Andriano, Waylon Harris and Pete Lopez. Lopez also operated a cotton harvesting business, and Estrella hired Lopez to harvest the crop. To pay for the service, repair, and maintenance of his farm equipment, Lopez executed a "Picking Assignment" in favor of KEC in October 1990 which provided as follows:

> Per a harvesting agreement I will be due certain monies from Estralla [sic] Partnership for harvesting all or part of their 1990 cotton crop.

> In as much [sic] as I am indebted to Keith Equipment Co., Inc. for goods sold, services rendered, and/or equipment rentals in the amount of $100,000. We hereby request that [Casa Grande] pay Pete G. Lopez and Keith Equipment Co., Inc. jointly an amount equal to $1.60 per CWT for cotton delivered to your gin under said harvesting agreement up to the full amount stated above.

The Picking Assignment was signed by Lopez and the other Estrella partners, and delivered to Casa Grande. In November 1990, Casa Grande made a partial disbursement on the Picking Assignment to Lopez and KEC on behalf of Estrella. By December 1, Casa Grande had disbursed the full amount of the Estrella crop loan, determined that the proceeds of the 1990 crop would not repay the loan, and refused to advance Estrella any further funds.

Later in December, Andriano and Lopez met with Casa Grande's representative to discuss Casa Grande's refusal to finance the remaining harvest. According to Casa Grande, it agreed to advance "the absolute minimum expense to harvest the crop" which included only the cost of labor, fuel, and "picking grease." According to Estrella, however, Casa Grande had "made a commitment" to honor the terms of the Picking Assignment and to pay Lopez and KEC jointly in exchange for Lopez's promise to finish the harvest. Following the December meeting, Casa Grande disbursed four checks totaling $30,751.30 payable to Lopez, who then finished the harvest.

KEC filed a complaint against Casa Grande claiming it was obligated to advance this money to KEC as assignee under the Picking Assignment.[1] At trial, however, the trial court permitted KEC to pursue an alternative breach of contract theory and introduce evidence that the parties' "course of dealing" had established an implied contract between itself and Casa Grande pursuant to the Picking Assignment.[2] At the close of the evidence, the court granted KEC's motion to conform its pleadings to the evidence. The jury awarded KEC damages of $31,407.52, representing the amount it was due for the harvest under the terms of the Picking Assignment.[3]

On appeal, Casa Grande contends the trial court abused its discretion by allowing KEC to assert a new legal theory, breach of contract, that was not contained in its pleadings or pretrial disclosure. In addition, Casa Grande contends the trial court erred by denying its motion for directed verdict on that claim and asserts several errors in the admission of evidence. We agree that the Picking Assignment did not contractually obligate Casa Grande to pay KEC, nor could such obligation be implied through the parties' course of dealing, evidence of which was erroneously admitted. In view of these conclusions, we need not address the propriety of the grant of KEC's motion to conform its pleadings as well as several of Casa Grande's additional claims of error.

### Course of Dealing

■ To constitute a contract, a writing must manifest the parties' intent to be bound. *Rogus v. Lords,* 166 Ariz. 600, 804 P.2d 133 (App.1991). Casa Grande agreed to finance Estrella, an agreement contained in the promissory note and security agreement. In separate transactions, Estrella and Lopez executed a picking contract and then agreed Lopez could assign the proceeds to KEC. Although this Picking Assignment was delivered to Casa Grande, it was not a party to the agreement, nor did it take part in the negotiations between Estrella and Lopez. As Casa Grande points out, the Picking Assignment alone does not obligate it to KEC but merely "requests" that monies paid under the assignment be distributed jointly to Lopez and KEC.

■ Under the Picking Assignment, KEC was a third party creditor of Estrella. While Casa Grande had issued checks to Estrella's creditors on other occasions, including KEC, advancing loan funds to third parties does not create a contract in favor of those third parties. *Pioneer Plumbing Supply Co. v. Southwest Savings and Loan Assoc.,* 102 Ariz. 258, 428 P.2d 115 (1967); *California Cotton Oil Corp. v. Rabb,* 88 Ariz. 375, 357

---

1. The trial court directed verdicts in favor of Casa Grande on Count Two (unjust enrichment) and Count Three (conversion).

2. Prior to trial, the trial court denied Casa Grande's motion to preclude KEC from alleging the existence of a contract.

3. This figure is derived from the value of the final harvested crop of 2,357,000 pounds. Under the terms of the Picking Assignment, KEC would have been due approximately $37,712.00 for this amount of cotton picked, minus $6,304.80 already paid by Casa Grande.

P.2d 126 (1960). We can find no expression of Casa Grande's intent to be bound in the Picking Assignment or any other document in the record. Indeed, the security agreement held by Casa Grande and signed by the Estrella partners expressly disclaims any obligation between Casa Grande and Estrella's creditors, and declares any assignment by Estrella "void and of no effect" with respect to the lender. If Estrella executed an assignment for the benefit of its creditors, it would be in default and its rights under the loan terminated, in which case Casa Grande retained the right to harvest the crop in a manner it "deem[ed] appropriate." *See Corenswet v. Amana Refrigeration, Inc.,* 594 F.2d 129 (5th Cir.1979) (express contract terms control over conflicting course of dealing).

■■■ Over Casa Grande's objections, the trial court admitted evidence that Casa Grande had paid KEC on behalf of Estrella under picking assignments executed in 1988, and also under picking assignments executed by other farmers. Casa Grande contends this was error. We agree. Course of dealing is defined as "a sequence of previous conduct between the parties to a particular transaction which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct." A.R.S. § 47–1205(A). Such evidence is allowed to "give particular meaning to or supplement or qualify terms of an agreement." A.R.S. § 47–1205(C); *see also Koenen v. Royal Buick Co.,* 162 Ariz. 376, 783 P.2d 822 (App.1989) (where terms in written contract are ambiguous, course of dealing evidence admissible to explain them). Course of dealing does not, however, create a contract. *Cities of Campbell v. Federal Energy Regulatory Commission,* 770 F.2d 1180 (D.C.Cir.1985); *Bespress, Inc. v. Capital Bank of Delhi,* 616 So.2d 795 (La.App.1993); *see* II E. Allan Farnsworth, Farnsworth on Contracts § 7.13 (1990); *In the Matter of Elcona Homes Corp.,* 863 F.2d 483, 487 (7th Cir.1988) ("A practice may be evidence of an obligation, may give meaning to vague terms ... but it is not the equivalent of it.").

Appellee cites *Carroll v. Lee,* 148 Ariz. 10, 712 P.2d 923 (1986), for the proposition that

an implied contract may be inferred from the course of conduct of the parties. We find *Carroll,* a case dealing with cohabiting domestic partners, to be far removed from the facts at hand. In *Carroll,* our supreme court found the exchange of unlike services between domestic partners had created an "implied partnership" and the "mutuality of obligation" required to imply an agreement as to property jointly acquired during cohabitation. *Id.* at 13–14, 712 P.2d at 926–927. The court applied contract theory because the aggrieved partner could not benefit from Arizona's marital presumption. *Id.* at 16, 712 P.2d at 929. In contrast, the parties here are businesses which dealt with one another at arm's length. Their expressions and conduct are to be interpreted in the commercial context of their interactions. We thus find *Carroll* inapposite.

The admission of course of dealing evidence clearly and unfairly prejudiced Casa Grande by confusing the issues and allowing the jury to be misled as to the applicable law. At the conclusion of the trial, KEC's counsel argued:

Now does that make any sense to you? He had a right to rely. Hell, he had the picking assignment. He had it coming to him. They had a course of conduct since 1975. They paid them all. That made a contract.

Now you're going to get an instruction on implied contract. What it's going to tell you—hey, for an implied contract all you have to find is that there was a course of conduct between the parties such that an agreement came into existence. We know that. There is no question about that. The evidence is unrefuted. There was a course of conduct. There was an expectation. You don't have to go through all this consideration, offer and acceptance. You'll have an instruction in there that says there's an implied contract. You can sign that jury form for the plaintiff and the interrogatory. No question.

The jury was also given several special interrogatories which it answered in the affirmative, including:

3. From the evidence presented, did Keith Equipment and Casa Grande Cotton

Finance have a course of dealing with the picking assignments or harvesting agreements such that Keith could reasonably expect to be paid by Casa Grande Finance for cotton picked and delivered to the gin[?]

4. From the evidence presented of the acts and conduct of the parties and the circumstances surrounding the transactions, did Keith Equipment and Casa Grande Cotton Finance enter into an implied contract to pay Keith pursuant to the picking assignment for the cotton harvested by Pete Lopez for Estrella Partnership Farms[?]

In sum, the Picking Assignment was not a contract with Casa Grande, and evidence of conduct prior to or after the Picking Assignment was not relevant to establish an implied contract based on a course of dealing, a theory that should not have been advanced to the jury.

### Admission of Hearsay

We lastly address Casa Grande's contention that the trial court improperly admitted prejudicial hearsay when it allowed Jed Keith, president of KEC, to testify over objection that after the December meeting Andriano told him that Casa Grande agreed to honor the Picking Assignment. The trial court overruled the objection on the ground that Andriano was available to be cross-examined. This was error because the declarant's availability is not, in and of itself, an exception to the hearsay rule. Ariz.R.Evid. 803, 17A A.R.S. KEC's claim on appeal that the testimony was admissible to show Keith's state of mind and, in any event, was not prejudicial is without merit. Keith's state of mind was irrelevant and the testimony was not limited to that issue. Moreover, prejudice occurs if the hearsay offered is material or relevant to contested issues in the case. *State v. Hutchinson,* 141 Ariz. 583, 688 P.2d 209 (App.1984). The existence of an oral contract between Casa Grande and KEC was an issue at trial and Keith's testimony that Andriano told him Casa Grande agreed to honor the assignment and "had come to terms on the payment of the harvesting" tended to prove the existence of such a con-

tract. Consequently, Keith's hearsay testimony was prejudicial and should have been precluded.

### Conclusion

For the foregoing reasons, we vacate the verdict and judgment in favor of KEC. Because there was arguably some, albeit attenuated, evidence that an oral agreement could have been reached at the December meeting that Casa Grande would pay KEC, we remand for further proceedings consistent with this decision. In our discretion, we decline to award attorneys' fees on appeal.

DRUKE C.J., and HATHAWAY, J., concur.