5 P.2d 911

In re the MARRIAGE OF Evan Joel POWNALL, Petitioner–Appellant, Cross Appellee,

and

Sherilyn May Pownall, Respondent–Appellee, Cross Appellant.

No. 1 CA–CV 99–0074.

Court of Appeals of Arizona, Division 1, Department C.

May 9, 2000.

Stanley David Murray, P.C. by Stanley David Murray, Phoenix, Attorneys for Petitioner–Appellant, Cross Appellee.

Musgrove, Drutz & Kack, P.C. by Mark W. Drutz, Grant K. McGregor, John G. Mull, Prescott, Attorneys for Respondent–Appellee, Cross Appellant.

## OPINION

PATTERSON, Judge.

¶1 Evan J. Pownall (Husband) appeals from the divorce decree finding the parties' premarital agreement invalid and awarding Sherilyn M. Pownall (Wife) an interest in the businesses Husband began prior to the parties' marriage, reimbursement for community income, and attorneys' fees. Wife cross-appeals from the denial of spousal maintenance. For the following reasons we reverse and remand.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 Husband and Wife met in Texas in 1988 and began living together shortly thereafter. In 1990, Husband and Wife moved to Arizona, where he purchased a house in Prescott, paying the down payment and mortgage with his earnings, and taking title in his name only. Husband and his stepfather, doing business as P. & H. Enterprises, subsequently opened four pizza franchise restaurants in which Husband had a one-half interest. Husband used only his earnings to finance the businesses. Wife worked at one of the restaurants for a brief period in 1990, but later found other employment.

¶3 Husband and Wife were scheduled to be married on May 28, 1994. Four days prior to the wedding, the parties visited Husband's attorney's office to discuss the premarital agreement. The attorney had prepared the agreement that purported to keep separate Husband's interests in the pizza businesses, as well as any future business interests he might acquire. The attorney explained to Wife that he was only representing the Husband, and that she may want to have another attorney look over the agreement before she signed. Husband offered to hire an attorney for Wife, but she declined. After reading through the agreement with Husband and his attorney, Wife signed the premarital agreement and the couple married as scheduled. Husband filed for dissolution little more than two years later.

¶4 During the divorce proceedings, the trial court concluded that the premarital agreement was invalid because Wife was not told and was unaware of the full value of the property subject to the premarital agreement. The trial court concluded that a quasi-marital partnership existed and awarded Wife half of Husband's interest in the pizza businesses, less $15,000 which Husband had contributed to the franchise fee from his separate property. The trial court also awarded Wife $11,916.39 for her share of the 1997 community income, a time during which Husband and Wife were separated. Husband was awarded the residence. The court denied Wife's request for spousal maintenance based on the property award, short duration of the marriage, and Wife's gainful employment. Husband was ordered to pay Wife's attorneys' fees in the amount of $27,383.29.

¶5 Husband timely appealed from the decree finding the premarital agreement invalid, the award to Wife of half of his interest in the pizza businesses, reimbursement of the community income, and her attorneys' fees. Wife timely cross-appealed from the denial of spousal maintenance. We have jurisdiction pursuant to Arizona Revised Statutes Annotated (A.R.S.) section 12–2101(B) (1994).

## DISCUSSION

*Validity of Premarital Agreement*

¶ 6 Husband argues that the court incorrectly found the premarital agreement invalid because Wife failed to satisfy her burden of proving it was unconscionable or that she involuntarily executed the agreement. We agree.

¶ 7 Whether a premarital agreement is unconscionable is a question of law. *See* A.R.S. § 25–202(E)(Supp.1999). This court is not bound by the trial court's decisions on questions of law, and we conduct a *de novo* review. *See Gerow v. Covill*, 192 Ariz. 9, 14, ¶ 19, 960 P.2d 55, 60 (1998).

¶ 8 Arizona adopted the Uniform Premarital Agreement Act (U.P.A.A.) in A.R.S. §§ 25–201 to –205(Supp.1999). Parties may enter premarital agreements regarding their rights and interests in the property of either or both parties. *See* A.R.S. § 25–203(A)(1). Written premarital agreements that are signed by both parties are enforceable "without consideration" unless:

The person against whom enforcement is sought proves either of the following:

1. The person did not execute the agreement voluntarily.

2. The agreement was unconscionable when it was executed and before execution of the agreement that person:

(a) Was not provided a fair and reasonable disclosure of the property or financial obligations of the other party.

(b) Did not voluntarily and expressly waive, in writing, any right to disclosure of the property or financial obligations of the other party beyond the disclosure provided.

(c) Did not have, or reasonably could not have had, an adequate knowledge of the property or financial obligations of the other party.

A.R.S. § 25–202(A),(C). Thus, in this case, Wife bears the burden of proving the invalidity of the agreement. *See* A.R.S. § 25–202(C).[1]

¶ 9 A comment to the U.P.A.A. states:

[T]o determine whether an agreement is unconscionable, the court may look to the economic circumstances of the parties resulting from the agreement, and any other relevant evidence such as the conditions under which the agreement was made, including the knowledge of the other party.

Unif. Premarital Agreement Act § 6, cmt., 9B U.L.A. 377 (1987) (quoting Unif. Marriage & Divorce Act § 306(amended 1973) cmt., 9A U.L.A. 250 (1998)). The standard of unconscionability to be used for purposes of the U.P.A.A. is that used in commercial and contract law. *See id.* The comment also notes that lack of independent legal counsel may be a factor in determining whether an agreement is unconscionable. *See* U.P.A.A. § 6, comment.

¶ 10 *Maxwell v. Fidelity Fin. Servs., Inc.*, 184 Ariz. 82, 907 P.2d 51 (1995), also provides guidance in determining what constitutes unconscionability. In *Maxwell*, the Arizona Supreme Court held that factors indicating procedural or bargaining unconscionability include:

[T]hose factors bearing upon . . . the real and voluntary meeting of the minds of the contracting party: age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, whether alterations in the printed terms were possible. . . .

*Id.* at 89, 907 P.2d at 58 (quoting *Johnson v. Mobil Oil Corp.*, 415 F.Supp. 264, 268 (E.D.Mich.1976)). Factors "[i]ndicative of substantive unconscionability are contract terms so one-sided as to oppress or unfairly surprise an innocent party," as well as "an overall imbalance in the obligations and

---

1. The trial court erroneously concluded that Husband had the burden of proving factors listed in *Spector v. Spector*, 23 Ariz.App. 131, 140, 531 P.2d 176, 185 (1975). The factors in *Spector* applied prior to Arizona's adoption of the U.P.A.A. in 1991. *See Hrudka v. Hrudka*, 186 Ariz. 84, 90, 919 P.2d 179, 185 (1995). However, because we review this question of law *de novo* and apply the correct burden of proof, this does not constitute reversible error.

rights imposed by the bargain...." *Id.*[2] We now examine the facts of this case in light of these factors to determine whether the premarital agreement was unconscionable.

¶ 11 Wife testified that, as early as 1990, Husband mentioned the possibility of a premarital agreement. The record shows that she knew that the purpose of the visit to Husband's attorney's office on May 24, 1994, was to sign a premarital agreement. Although Wife was upset with Husband beforehand for that reason, she accompanied Husband anyway. The subject property is identified as "Schedule A" in the agreement.[3] It was also explained by Husband's attorney that the agreement was intended to protect Husband's interests in such property. A spouse's work in a business may not necessarily be community property. That does not make the terms of the agreement unconscionable, and Wife was provided a "fair and reasonable" disclosure of the property involved. Further, Wife knew the lifestyle the income from pizza businesses had provided to her over the years, and she could have independently estimated their value. She also worked in one of the stores for a period of time and was reasonably familiar with the business.

¶ 12 Husband's attorney also made it clear to Wife that he represented Husband only and suggested that she have another attorney review the agreement. Wife stated that she did not need an attorney and refused Husband's offer to hire one for her. She should not be permitted to decline the opportunity to protect herself then later claim that the parties were not on equal bargaining terms. Nor was it Husband's attorney's duty to explain the nature or value of the rights Wife was relinquishing. He explained that he was not her attorney and that he represented only Husband's interest.

¶ 13 Finally, there is no evidence that Wife was compelled to sign the agreement as drafted and presented by Husband's attorney without alteration. Although Wife may have been faced with postponing the wedding, this does not make the agreement involuntary. Therefore, we find the premarital agreement valid and remand for consideration, in light of this determination, other issues not resolved below.

*Disposition of Husband's Interest in P. & H. Enterprises*

¶ 14 Having found the premarital agreement invalid, the trial court concluded that the parties entered a "quasi-marital partnership" and awarded each party half of Husband's interest in the pizza businesses, less the $15,000 franchise fee Husband paid with his separate property. Having determined that the premarital agreement was valid, we must also consider whether the trial court was correct in concluding that Wife was entitled to an interest in Husband's property based on the theory of a "quasi-marital partnership."

¶ 15 We review the trial court's division of property for an abuse of discretion. *See Hrudka,* 186 Ariz. at 93, 919 P.2d at 188. The characterization of the property, however, is a conclusion of law which this court reviews *de novo. See Gerow,* 192 Ariz. at 14, ¶ 19, 960 P.2d at 60.

¶ 16 Property that a spouse owns before marriage and the income, rent, issues, and profits of that property accruing during marriage are the separate property of that spouse. *See* A.R.S. § 25–213 (Supp.1999). *But see Cockrill v. Cockrill,* 124 Ariz. 50, 52, 601 P.2d 1334, 1336 (1979) (increase in the value of separate property during marriage that results from community effort should be apportioned between the separate property of the owner and the community property of

---

2. *Maxwell* held that, under Arizona's version of the Uniform Commercial Code, a claim of unconscionability can be established by a showing of substantive unconscionability alone, but did not decide if procedural unconscionability alone was sufficient. 184 Ariz. at 90, 907 P.2d at 59.

3. "Schedule A" describes the property as follows:

All right, title, and interest in and to P. & H. Enterprises, Inc., an Arizona corporation, which currently operates four (4) stores of the pizza and restaurant business known as Little Caesars Pizza, and in any new or different form of business interest, whether a sole proprietorship, partnership, corporation, or limited liability company, that might be owned by Evan J. Pownall in the future.

the spouses). Property acquired by the parties during the marriage is presumed to be community property. *See* A.R.S. § 25–211 (Supp.1999).

¶ 17 It is undisputed that Husband acquired his interest in the pizza businesses before the parties' marriage. Thus, that property is presumed to be Husband's separate property. *See id.* However, Wife argued, and the trial court agreed, that, prior to their marriage, the parties had entered an agreement to combine efforts and acquire property jointly.

¶ 18 In *Cook v. Cook,* 142 Ariz. 573, 578, 691 P.2d 664, 669 (1984), the Arizona Supreme Court recognized the validity of an agreement, express or implied, between unmarried persons to pool resources and share equally in certain assets. *See also Carroll v. Lee,* 148 Ariz. 10, 12, 712 P.2d 923, 925 (1986). In the absence of an express agreement, we look to the parties' conduct to determine whether there was an implied contract. *See Muchesko v. Muchesko,* 191 Ariz. 265, 268, 955 P.2d 21, 24 (1997); *Cook,* 142 Ariz. at 576, 691 P.2d at 667.

¶ 19 Wife claims the parties entered an agreement to share their assets in 1989. Husband and Wife pooled their resources and maintained joint checking accounts for household expenses. Wife did not contribute financially to the pizza businesses, but did work with Husband for about one year without drawing a paycheck. When the parties refinanced a loan on the pizza businesses, Husband's accountant included Wife as a co-applicant and listed both parties' incomes on the personal financial statement submitted to the lender. The accountant also listed the residence and the pizza businesses as joint assets. However, the accountant testified that she did not intend for that designation to constitute an apportionment of the parties' rights in those assets. We find that the accountant's characterization of the property does not establish that *the parties* intended to acquire and hold that property jointly.

¶ 20 Husband took title to the Prescott residence in his name only and paid the down payment with his separate funds. Wife's name did not appear on the franchise documents Husband and his stepfather submitted to obtain the pizza business. Wife did not participate in the acquisition of the business.

¶ 21 Although the parties' conduct could support an implied agreement to pool their income, their conduct does not suggest an implied agreement to acquire property jointly with those pooled resources. Husband acquired both the residence and the pizza businesses with his separate funds and took title in his name only. This is clearly different from the implied agreements found in *Carroll* and *Cook,* in which the parties intended to hold property jointly, purchased property with their pooled resources, and took title jointly. *See Carroll,* 148 Ariz. at 14–15, 712 P.2d at 927–28; *Cook,* 142 Ariz. at 576, 691 P.2d at 667.

¶ 22 Finally, the trial court failed to consider the most direct evidence of Husband's intent: the premarital agreement. The premarital agreement, as agreed upon by Wife, clearly indicates that Husband did not intend to hold the pizza businesses as joint property and sought to retain the separate nature of that property during the marriage. The evidence does not support the trial court's finding that the parties entered an implied agreement to acquire property jointly. Thus the residence and P & H Enterprises remain Husband's separate property. We remand to determine the extent, if any, of the community's interest in these two assets based on what contribution Wife may have made to them. *See Cockrill,* 124 Ariz. at 54, 601 P.2d at 1338.

*Reimbursement for Community Income*

¶ 23 Husband also appeals from the trial court's award to Wife of $11,916.39 as her share of the community income for 1997. The trial court concluded that, during 1997, when the parties lived apart, the community earned $61,111.02, of which Husband earned and kept $42,471.90. The court concluded that Wife was entitled to reimbursement of her share of the community income. However, the trial court also found that Husband paid the mortgage from the time the parties separated in July 1996, through November 1997, while Wife had exclusive possession of

the residence. The court denied Wife any share in the appreciated value of the residence because of her rent-free use of the residence for more than a year.

¶ 24 Husband argues that because he paid the mortgage while Wife was in sole possession of the residence, it was unfair and inequitable to award Wife her share of the 1997 community income. However, the trial court accounted for the fact that Wife received the benefit of living in the residence rent-free when it denied her any portion of the appreciated value of the residence. We do not find the reimbursement award inequitable. Accordingly, in determining on remand the community's interest in Husband's separate property residence, the trial court may again offset that interest with the benefit Wife received in living in the residence rent-free.[4]

¶ 25 Wife claims Husband's argument does not take into account the trial court's finding that Husband never informed Wife of his intent to claim the residence as separate property. We fail to see how Husband's alleged failure to tell Wife of his intent to claim the residence as his separate property has any bearing on Wife's claim for reimbursement of community income.[5]

*Attorneys' Fees*

¶ 26 The trial court awarded Wife her attorneys' fees totaling $27,383.29. We review the award of attorneys' fees for an abuse of discretion. *See Hrudka*, 186 Ariz. at 94–95, 919 P.2d at 189–90. Under A.R.S. § 25–324 (Supp.1999), the trial court must consider the parties' relative financial resources and the reasonableness of the parties' positions.

¶ 27 Husband argues that the fee award was an abuse of discretion because the trial court made no findings as to the reasonableness of his position. However, Husband

did not object to the lack of this finding. In his motion for new trial, he only argued that Wife was not entitled to the full award because she did not prevail on all of her requests. Husband's failure to object below to the lack of findings of fact precludes him from raising this argument on appeal. *See Trantor v. Fredrikson,* 179 Ariz. 299, 300, 878 P.2d 657, 658 (1994).

¶ 28 Husband claims that Wife received a sizeable judgment which should be considered in determining the parties' relative financial resources. We have reversed and remanded the trial court's conclusion that Wife was entitled to half of Husband's interest in the pizza businesses. The full extent of Wife's recovery remains an issue to be determined on remand.

¶ 29 The court found that Husband and Wife currently earned $42,000 and $18,000, respectively. The evidence suggests that the parties will continue to earn these amounts in the future. This disparity in income supports the award of fees even considering that Husband's position was reasonable. *See Burnette v. Bender,* 184 Ariz. 301, 306, 908 P.2d 1086, 1091 (1995). We affirm the trial court's award of Wife's attorneys' fees.

*Spousal Maintenance*

¶ 30 Wife cross-appeals from the trial court's denial of her request for spousal maintenance of $800 per month for three years. The trial court denied spousal maintenance because of the short duration of the marriage (two years), Wife's gainful employment, and the property award to Wife.

¶ 31 "An award of spousal maintenance is within the sound discretion of the trial court" and we will reverse only upon a finding of an abuse of that discretion. *Hardin v. Hardin,* 163 Ariz. 501, 502, 788 P.2d 1252, 1253 (1990). We must consider the evidence in the light most favorable to the

---

4. Husband contributed approximately $12,800 of community income to the mortgage and utilities, $9600 of that being paid in 1997. Thus, Wife indirectly received $9600 of her share of the 1997 community income by Husband's payment of the mortgage.

5. Husband argues for the first time in his reply brief that the court had no statutory authority to apportion community income that no longer existed at the time of the dissolution. Arguments raised for the first time in a reply brief are deemed waived. *See Muchesko,* 191 Ariz. at 268, 955 P.2d at 24.

584

non-appealing party and will sustain the judgment if any reasonable evidence supports it. *See Thomas v. Thomas,* 142 Ariz. 386, 390, 690 P.2d 105, 109 (1984).

¶ 32 To be eligible for spousal maintenance, Wife first must establish one of the factors set forth in A.R.S. § 25–319(A) (Supp. 1999). *See id.* The court must find that Wife: (1) lacks sufficient property, including property awarded to her, to meet her reasonable needs; (2) is unable to support herself through appropriate employment or lacks the ability to obtain such adequate employment; (3) contributed to the educational opportunities of Husband; or (4) had a marriage of long duration and is of an age which may preclude her from gaining suitable employment. *See* A.R.S. § 25–319(A)(1–4). Wife argues that she is entitled to spousal maintenance under the first two factors.

¶ 33 Wife earns approximately $18,639 per year as a bank teller. Her net monthly income is $1259.66. The mortgage on the marital residence was approximately $800 per month. Wife testified that she could not afford comparable housing on her income. The trial court's denial of maintenance was based, in part, on the property Wife received in the dissolution ($77,293).

¶ 34 Because we found the premarital agreement valid, Wife is not entitled to receive any portion of the value of the pizza businesses. Therefore, on remand, the court must take the premarital agreement's validity into consideration when deciding whether an award of spousal maintenance will be appropriate. There is considerably less community property readily available for assignment to Wife, thus re-establishing spousal maintenance as an issue. Accordingly, we reverse the denial of spousal maintenance and remand for a determination of whether Wife is entitled to maintenance based upon a reconsidered property award.

## ATTORNEYS' FEES ON APPEAL

¶ 35 Both parties request their attorneys' fees on appeal. We find that neither party took an unreasonable position on appeal, thus, in our discretion, we order that each party bear its own costs.

## CONCLUSION

¶ 36 We reverse the trial court's findings and hold that the premarital agreement is valid. We also reverse the trial court's finding that the parties entered a quasi-marital property agreement and remand for a redetermination of the community's interest in Husband's separate property residence and interest in the pizza businesses. We affirm the reimbursement and attorneys' fees award. We also remand for reconsideration of the issue of spousal maintenance.

CONCURRING: SUSAN A. EHRLICH, Judge, and THOMAS C. KLEINSCHMIDT, Judge.