NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

JURGEN M., ASHLEY C., *Appellants*,

*v.*

DEPARTMENT OF CHILD SAFETY, E.M., *Appellees*.

No. 1 CA-JV 21-0198
FILED 3-1-2022

Appeal from the Superior Court in Maricopa County
No. JD22977, JS20533
The Honorable Michael J. Herrod, Judge

**AFFIRMED**

COUNSEL

John L. Popilek PC, Scottsdale
By John L. Popilek
*Counsel for Appellant Father*

Maricopa County Public Advocate, Mesa
By Suzanne W. Sanchez
*Counsel for Appellant Mother*

Arizona Attorney General's Office, Tucson
By Autumn Spritzer
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Samuel A. Thumma delivered the decision of the Court, in which Presiding Judge Maria Elena Cruz and Judge Michael J. Brown joined.

---

**T H U M M A**, Judge:

¶1        Jurgen M. (Father) and Ashley C. (Mother) appeal an order terminating their parental rights to their child E.M. Because they have shown no error, the order is affirmed.

## FACTS AND PROCEDURAL HISTORY

¶2        Given behavioral health issues, Father and Mother have had their parental rights to six other children terminated in the past. During those proceedings, the Department of Child Safety (DCS) has provided them various services, including referrals for psychological evaluations, counseling and parent aides. The parents completed the psychological evaluations but were unsuccessful in any other services. Three evaluating psychologists opined that further reunification services would be futile.

¶3        When E.M. was born in May 2020, DCS' investigation revealed concerns about feeding the child and the home environment. Mother denied needing any support to parent E.M. Father echoed that view, and denied any mental-health issues, despite his history. DCS took E.M. into custody, filed a dependency petition and also filed a petition to terminate, alleging prior-termination and mental deficiency as to Mother and mental illness as to Father.

¶4        Although the court first relieved DCS of any obligation to provide reunification services, *see* Ariz. Rev. Stat. (A.R.S.) § 8-846(D)(1)(b)(2022),[1] it quickly rescinded that order. DCS referred parents for psychological evaluations, a parent aide, a family support coordinator and transportation. DCS also offered to assist the parents to participate in counseling through their own insurance, and to help Father to self-refer for a psychiatric evaluation.

---

[1] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

¶5        The parents completed psychological evaluations in August 2020. Mother's evaluation confirmed her deficiencies, stating she could not safely be a primary caregiver to a child. Echoing concerns from past evaluations, Father was diagnosed with behavioral health disorders. The psychologist opined that Father had a poor prognosis to parent E.M. in the foreseeable future, adding Father "does not seem to have any awareness or insight into what would be expected of him to be a parent providing safe and effective care for a child."

¶6        Mother participated in services, including through the Division of Developmental Disabilities (DDD), which worked with her to develop daily living and self-care skills. Father participated in counseling, though his counselor expressed concern about his motivation. The parents missed several visits and Father did not complete a psychiatric evaluation.

¶7        A few months before the termination adjudication, a psychologist recommended the parents receive a family support coordinator and a parent aide, so DCS referred them for those services. The court held a combined dependency and termination adjudication over six days, ending in March 2021. The court found E.M. dependent and terminated the parents' rights. This court has jurisdiction over parents' timely appeal pursuant to Article 6, Section, 9, of the Arizona Constitution, A.R.S. §§ 8-235(A), 12-120.21(A) and 12-2101(A) and Ariz. R.P. Juv. Ct. 103-104.

**DISCUSSION**

¶8        Parents challenge DCS' efforts to provide them with appropriate reunification services. Father also argues that insufficient evidence supports the termination grounds, and Mother challenges the finding that termination is in E.M.'s best interests.

¶9        As applicable here, to terminate parental rights, a court must find by clear and convincing evidence that at least one statutory ground in A.R.S. § 8–533(B) has been proven and must find by a preponderance of the evidence that termination is in the best interests of the child. *See Kent K. v. Bobby M.*, 210 Ariz. 279, 288 ¶ 41 (2005); *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249 ¶ 12 (2000). Because the superior court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts," this court will affirm an order terminating parental rights as long as it is supported by reasonable evidence. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93 ¶ 18 (App. 2009) (citation omitted). This court "will accept the juvenile court's findings

of fact unless no reasonable evidence supports those findings, and we will affirm a severance order unless it is clearly erroneous." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280 ¶ 4 (App. 2002). This court does not reweigh the evidence, but looks "only to determine if there is evidence to sustain the court's ruling." *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47 ¶ 8 (App. 2004).

## I.     The Court Did Not Err in Finding DCS Provided Parents Appropriate Reunification Services.

¶10        DCS makes a reasonable effort to provide appropriate reunification services when it provides a parent with the "time and opportunity to participate in programs designed to improve the parent's ability to care for the child." *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 94 ¶ 20 (App. 2009). For a disabled parent, DCS must provide reunification services in compliance with the Americans with Disabilities Act (ADA). *Jessica P. v. Dep't of Child Safety*, 251 Ariz. 34, 39 ¶ 14 (App. 2021). "[W]hat constitutes a [reasonable] effort will vary by case based on the family's unique circumstances." *Donald W. v. Dep't of Child Safety*, 247 Ariz. 9, 23 ¶ 50 (App. 2019).

¶11        DCS need not provide every conceivable service or ensure that a parent participates in each service it offers. *In re Maricopa Cty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994). DCS must "undertake measures [that have] a reasonable prospect of success" in reuniting the family, and futile efforts are not required. *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 192 ¶ 34 (App. 1999). The court examines the "totality of the circumstances," including whether DCS made "reasonable efforts to assist the parent in areas where compliance proves difficult." *Donald W.*, 247 Ariz. at 23 ¶ 50, 26 ¶ 68.

¶12        The parents argue they had insufficient time to participate in reunification services. This matter proceeded comparatively quickly, in large part because DCS filed a nearly contemporaneous termination petition given parents' history. DCS, however, acted reasonably in providing services for the parents during this proceeding. DCS immediately referred them for supervised visits, the parents completed their psychological evaluations within four weeks after the court reinstituted DCS' obligation to provide services. After a psychologist recommended the parents receive a family support coordinator and a parent aide, DCS made those services available within weeks.

¶13　　　　Over the past eight years, DCS has provided the parents many services. Those services included three psychological evaluations, counseling, four parent aides, family preservation services and, for Father, a neuropsychological and psychiatric evaluation. None of those services led to reunification, and Father's current evaluating psychologist stated that further services would be futile.

¶14　　　　Mother also argues that DCS failed to provide her with a parent aide "that would have worked with Father as the primary care-taking parent, with Mother in an assistant role." The parent aide, however, worked with both parents to improve their primary parenting skills. But Father resisted participating in the service, leaving Mother to act as the primary parent. Father did not acknowledge Mother's inability to be the primary parent for E.M. until the last day of trial. Thus, parents have not shown that DCS failed to provide appropriate services.

¶15　　　　Mother argues that she made significant improvements in her habilitation services, and DCS should have coordinated with them to better understand how to accommodate her. The evidence shows, however, that the habilitation services were designed to address Mother's own daily living and self-care skills. The focus of this proceeding, however, is Mother's ability to parent. Although Mother did make some progress in her habilitation service, her ability to parent largely remained unchanged.

¶16　　　　Mother received accommodations from the parent aide, including repetition of lessons, videos, and a hands-on teaching approach. These efforts aligned with the recommendations by Mother's evaluating psychologist that she is a visual learner and could profit from demonstration, review of videos and "hands-on" interactions with E.M. Both the DCS investigator and the case manager contacted DDD and Mother's habilitation provider, neither of which suggested further accommodations. The evidence supports the court's determination that DCS made reasonable efforts to provide the parents with appropriate reunification services, including reasonable accommodations under the ADA for Mother.

**II.     The Trial Record Supports the Termination Order for Father.**

¶17          Father argues insufficient evidence supports the termination of his parental rights under the mental-illness ground because he and Mother have changed over their eight-year involvement with DCS. A court may terminate parental rights if a "parent is unable to discharge parental responsibilities because of mental illness . . . and there are reasonable grounds to believe that the condition will continue for a prolonged indeterminate period." A.R.S. § 8-533(B)(3). This ground does not require the court to find a parent is "unable to discharge any parental responsibilities," but "establish[es] a standard which permits a trial judge flexibility in considering the unique circumstances of each termination case." *In re Appeal in Maricopa Cty., Juv. Action No. JS-5894*, 145 Ariz. 405, 409 (App. 1985).

¶18          The court found Father had consistently been diagnosed with mental illnesses, including ADHD and a personality disorder with narcissistic and schizoid features, and that his condition will continue for a prolonged, indeterminate period. Reasonable evidence supports these findings, which were supported by multiple mental-health professionals.

¶19          Father argues DCS failed to prove he had any mental-health issues beyond ADHD. Even if he had not waived the issue by raising it for the first time in his reply, *see In re Marriage of Pownall*, 197 Ariz. 577, 583 n.5, ¶ 25 (App. 2000), it is not supported by the record. In his current psychological evaluation, the psychologist had enough information to diagnose Father with a personality disorder, later testifying that "because of the fact that [his personality disorder has] endured over time, and has been seen by other evaluators of him, it would be more than just a rule out diagnosis."

¶20          The court also found Father's mental illnesses render him unable to discharge his parental responsibilities because he is "inattentive to the needs of anyone but himself" and lacks insight into Mother's deficiencies. Although with substantial concerns noted by Father's 2017 evaluating psychologist, Father's current evaluating psychologist determined that his personality disorder was ongoing, with Father identifying no changes he needed to make to have E.M. returned to his care. Nor did Father recognize the extent of Mother's limitations, though he had been in a relationship with her for more than a decade while she received multiple interventions for her mental disability. The psychologist stated that Father's mental illness "would expose a child to neglect," as he would

likely be unaware of how to provide a safe home environment or meet a child's needs.

¶21          Father points to his testimony that he was willing to be E.M.'s primary caretaker and not leave her alone with Mother. However, the court rejected Father's testimony, finding that

> Father has not hesitated in his willingness to leave [E.M.], and his other children in the care of Mother, despite her intellectual disabilities. Throughout this case, until trial, Father has expressed his intention that Mother be the primary parent. . . . Father has not fully participated in [services], and has largely left the parenting issue to Mother.

Reasonable evidence supports these findings. Father also points to his participation in counseling, parent-aide services, and Mother's habilitation services. Although Father participated in each of these services, he delayed participating in counseling and later stated he only attended because he was told to do so, resisted engaging in the parent-aide service and resisted and undermined Mother's habilitation service to the point the provider had to pause the training. On this record, reasonable evidence supports the superior court's order terminating Father's parental rights based on mental illness.[2]

## III.     The Trial Evidence Shows Termination Is in E.M.'s Best Interests.

¶22          Mother asserts that the court erred in finding termination was in E.M.'s best interests because DCS did not sufficiently accommodate her disability and because she and Father agreed at trial that they would not leave E.M. alone with Mother. "[A] determination of the child's best interest must include a finding as to how the child would benefit from a severance or be harmed by the continuation of the relationship." *Maricopa Cty. Juv. Action No. JS-500274*, 167 Ariz. 1, 5 (1990). Courts "must consider the totality of the circumstances existing at the time of the severance determination, including the child's adoptability and the parent's rehabilitation." *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 148 ¶ 1 (2018).

---

[2] Accordingly, this court does not address Father's arguments pertaining to the prior-termination ground. *See Jesus M.*, 203 Ariz. at 280 ¶ 3.

**¶23** Mother's arguments amount to a request to reweigh the evidence, which this court will not do. *Mary Lou C.*, 207 Ariz. at 47 ¶ 8. Moreover, reasonable evidence supports the finding that E.M. would benefit from termination because she is in an adoptive placement who can provide for her needs.

## CONCLUSION

**¶24** The order terminating the parental rights of Mother and Father is affirmed.



AMY M. WOOD • Clerk of the Court
FILED:     AA