NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

RODERICK HOWARD BARNETT, *Petitioner/Appellant*,

*v.*

NGAN NGOC BARNETT, *Respondent/Appellee*.

No. 1 CA-CV 21-0714 FC
FILED 8-18-2022

Appeal from the Superior Court in Maricopa County
No. FC2019-002329
The Honorable Monica Edelstein, Judge

**DECREE AFFIRMED IN PART; VACATED IN PART, AND
REMANDED**

COUNSEL

Jaburg & Wilk, Phoenix
By Mervyn T. Braude
*Co-Counsel for Petitioner/Appellant*

R D Smith Law, P.C., Scottsdale
By Roger D. Smith
*Co-Counsel for Petitioner/Appellant*

Ngan Ngoc Barnett, Chandler
*Respondent/Appellee*

---

**MEMORANDUM DECISION**

Judge Cynthia J. Bailey delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Vice Chief Judge David B. Gass joined.

---

**B A I L E Y**, Judge:

¶1        Roderick Howard Barnett ("Husband") appeals the superior court's decree of dissolution and order denying Husband's motion to alter or amend the decree, arguing the court erred in awarding spousal maintenance and an equalization payment to Ngan Ngoc Barnett ("Wife"). Although we affirm the dissolution, we vacate the award of spousal maintenance, the award of the parties' business to Husband, and the equalization payment to Wife, and we remand for determinations consistent with this decision.

## FACTS AND PROCEDURAL HISTORY

¶2        Husband and Wife were married in March 2012. The parties signed a premarital agreement, which waived any award of spousal maintenance to either party. In March 2019, Husband filed a petition for dissolution of the marriage, seeking to enforce the premarital agreement.

¶3        During the marriage, the couple co-owned and operated an Asian fusion restaurant. Husband managed and had sole access to the accounts, except during parts of January and February 2021, when Wife obtained an order of protection and briefly had sole control of the business. Shortly after that period, Wife agreed to allow Husband to manage the restaurant, while she received a $3,000 monthly salary pending dissolution. Before the dissolution trial, the parties asked the court to order the business be sold and the profits split, with disagreement only on the allocation of the profits between them. Husband represented he had an offer to purchase the business for $150,000.

¶4        At trial, the parties disputed whether the business was profitable. Husband testified the business was not profitable and he had invested his separate funds into the business to keep it afloat between 2014 and 2021. In contrast, Wife testified that, in the preceding few years, the restaurant had average monthly sales of $85,000 and annual net profits of

$120,000 to $150,000. She referenced "self-prepared profit and loss statements" from around the time she managed the restaurant alone and submitted into evidence a handful of cash register receipts from late 2020 and early 2021. Neither party submitted any exhibits fully showing the business's profits and losses for any year.

**¶5** As to the premarital agreement, Wife testified she had been told the agreement was standard procedure in the United States, a country she immigrated to approximately one month before the marriage. She stated Husband gave her a check for $1,500, dropped her off at an attorney's office, told her to hand the attorney the check, and sign the document. The process took less than ten minutes. She did not ask the lawyer questions because she believed the agreement was part of the normal marriage process.

**¶6** The court ordered dissolution of the marriage and awarded the business to Husband with an equalization payment to Wife of $48,000. The court declined to enforce the spousal maintenance waiver and ordered Husband to pay Wife $5,000 in monthly spousal maintenance for five years. The court denied Husband's subsequent motion to alter or amend the decree.

**¶7** We have jurisdiction over Husband's timely appeal under Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(1) and (2); *see Yee v. Yee*, 251 Ariz. 71, 73, ¶ 1 (App. 2021).

## DISCUSSION

I.      The Premarital Agreement's Waiver of Spousal Maintenance

**¶8** Husband argues the superior court erred in finding that Wife entered the agreement involuntarily and in applying A.R.S. § 25-202(D) to invalidate the premarital agreement's waiver of spousal maintenance. We agree.

  A.      Voluntariness

**¶9** Whether a premarital agreement is enforceable is question of law, which we review *de novo*. *See In re Marriage of Pownall*, 197 Ariz. 577, 580, ¶ 7 (App. 2000). We defer to the superior court's factual findings if substantial evidence supports them, *Kocher v. Dep't of Revenue*, 206 Ariz. 480, 482, ¶ 9 (App. 2003), without reweighing conflicting evidence on appeal, *In re Estate of Pouser*, 193 Ariz. 574, 579, ¶ 13 (1999).

¶10 Under Arizona law, parties may enter premarital agreements that modify or eliminate spousal support. A.R.S. § 25-203(A)(4). The agreement must be in writing and signed by both parties. *See* A.R.S. § 25–202(A). A premarital agreement is not enforceable if the agreement was unconscionable, or it was not executed voluntarily. A.R.S. § 25-202(C). The person against whom enforcement is sought must prove involuntariness. *Id.*

¶11 In finding the agreement involuntary, the superior court summarized Wife's testimony as follows: When Wife signed the agreement, she had recently arrived in the United States and did not understand legal written English, and the attorney hired by Husband to counsel her did not explain the agreement but simply pointed to where to sign. Wife testified she signed the agreement without asking questions of Husband or the attorney because Husband told her the agreement was standard procedure.

¶12 Wife does not cite case law supporting an involuntariness finding on this record. In contrast, this court has reversed the invalidation of a premarital agreement under similar circumstances. *See Pownall*, 197 Ariz. at 581, ¶¶ 12-13 (reversing decision invalidating premarital agreement where there was "no evidence that Wife was compelled to sign the agreement as drafted"). The record does not support the court's finding that Wife entered the agreement involuntarily. Wife was represented by separate counsel, met independently with the attorney, and had the opportunity to ask questions about the agreement but did not. Wife's testimony that Husband told her the agreement was standard procedure does not suggest that Husband compelled Wife to sign the agreement. *See id.* On this record, the agreement is enforceable.

    B.    A.R.S. § 25-202(D)

¶13 Notwithstanding voluntariness, the superior court found "based on the facts of the case, A.R.S. § 25-202(D) allows the Court to invalidate a waiver based on Wife's qualification/eligibility for State support as a result of the proceeding." Thus, the court found the waiver unenforceable. This finding misconstrues § 25-202(D), which states if the "elimination [of spousal support] causes one party to the agreement to be eligible for support under a program of public assistance at the time of separation or marital dissolution, a court, notwithstanding the terms of the agreement, may require the other party to provide support *to the extent necessary to avoid that eligibility.*" A.R.S. § 25-202(D) (emphasis added). Section 25-202(D) does not permit invalidation of a waiver of spousal maintenance outright. And the court's $5,000 monthly award was not tied

to the amount necessary to prevent Wife's eligibility for public assistance. Indeed, $3,000 of the monthly award corresponded to future wages from the couple's restaurant.

**¶14** We therefore vacate the superior court's finding invalidating the spousal maintenance waiver and remand for the court to consider if any amount of spousal maintenance is warranted under A.R.S. § 25-202(D), considering any equalization or other payments when deciding the amount required to avoid state assistance.

II. Equalization Payment

**¶15** Husband also argues the superior court abused its discretion in awarding Wife a $48,000 equalization payment in exchange for awarding Husband the parties' business and for back wages purportedly owed from the community business.

**¶16** The superior court has broad discretion to equitably divide property, and we will not disturb its allocation absent an abuse of discretion. *Boncoskey v. Boncoskey*, 216 Ariz. 448, 451, ¶ 13 (App. 2007). We will sustain the superior court's ruling if it is reasonably supported by the evidence. *Kohler v. Kohler*, 211 Ariz. 106, 107, ¶ 2 (App. 2005).

**¶17** Before the dissolution hearing, the parties agreed that the court should order the sale of the community business, although they strongly disagreed at trial on the profitability (if any) of that business. Nevertheless, instead of ordering the business sold, the court awarded the restaurant to Husband. In so doing, the court noted that the parties did not submit a business valuation and that there was insufficient evidence to determine the business's true value and equity, but then found "an equalization payment to Wife for her back-wages is necessary." The court awarded Wife $48,000, which the court calculated as being equal to a $3,000 monthly wage from the date of the dissolution petition to the hearing date, and excluding an amount already entered against Husband for a portion of the back wages.

**¶18** In this case, the court erred in rejecting the parties' pretrial agreement to sell the business and declining to order that the business be sold. The parties' briefs, signed by their attorneys, amounted to a financial separation agreement, and the court abused its discretion in rejecting the agreement without a finding of unfairness. *See* Ariz. R. Fam. Law P. 69 ("An agreement between the parties is valid and binding on the parties if [] the agreement is in writing and signed by the parties personally or by counsel on a party's behalf . . . ."); A.R.S. § 25-317(B) (stating that the terms

of a financial settlement agreement "are binding on the court unless it finds, after considering the economic circumstances of the parties and any other relevant evidence produced by the parties, . . . that the separation agreement is unfair"); *see also Wick v. Wick*, 107 Ariz. 382, 385 (1971) (explaining a court is "duty-bound" to distribute community property in a fair manner, even if doing so is contrary to the terms of the parties' agreement).

¶19      There is no record evidence supporting the award of the community business to Husband, countered by a $48,000 "equalization payment" to Wife, as co-owner, based on back wages for which the court provided no clear calculation and that cannot be readily determined on the record provided. Ostensibly, because the parties expected the business to sell, the parties did not arrange a business valuation and submitted little evidence for the court to independently value the business. Although Wife should have more diligently requested the information through discovery, as the court noted, Husband refused to provide any financial information despite having effectively sole access to the restaurant's books and accounts at almost all times. Accordingly, the court was left with little evidence to evaluate the business. We therefore vacate the portion of the decree awarding the business to Husband with an equalization payment to Wife and remand for an equitable division of assets consistent with this decision.

III.    Attorneys' Fees and Costs on Appeal

¶20      Husband requests attorneys' fees on appeal under A.R.S. § 25-324 and costs under A.R.S. § 12-341. Section 25-324 authorizes an award of attorneys' fees based on consideration of the financial resources of the parties and the reasonableness of the positions taken by each party throughout the proceedings. The superior court awarded attorneys' fees to Wife and found that Husband advanced unreasonable positions in the litigation. Husband has not pointed to any change in the parties' financial circumstances since the date of the decree, and neither side has appeared unreasonable on appeal. In our discretion, we decline to award Husband attorneys' fees. As the prevailing party on appeal, Husband is entitled to taxable costs under § 12-341 upon compliance with Arizona Rule of Civil Appellate Procedure 21.

**CONCLUSION**

¶21      We affirm dissolution of the parties' marriage but vacate the portion of the decree awarding spousal maintenance to Wife, the award of the community business to Husband, and the court's calculation of the

associated equalization payment.  We remand for the court to reconsider whether any award of spousal maintenance is appropriate under A.R.S. § 25-202(D) and for the court to either order sale of the community business or to calculate a fact-based valuation of the business before awarding the business, division of the assets, and calculation of any equalization payment.



AMY M. WOOD • Clerk of the Court
FILED:   AA