NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

SARA M. SCHNEIDER, *Petitioner/Appellee/Cross-Appellant*,

*v.*

AUNDRAE K. HARRIS, *Respondent/Appellant/Cross-Appellee*.

No. 1 CA-CV 25-0063 FC

FILED 12-17-2025

Appeal from the Superior Court in Maricopa County
Nos. FC2018-095709, FC2019-095633
The Honorable William R. Wingard, Judge

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED**

COUNSEL

Aundrae Harris, Tempe
*Respondent/Appellant/Cross-Appellee*

Sara Schneider, Queen Creek
*Petitioner/ Appellee/Cross-Appellant*

---

**MEMORANDUM DECISION**

Judge Kent E. Cattani delivered the decision of the Court, in which Presiding Judge Paul J. McMurdie and Judge Samuel A. Thumma joined.

---

**C A T T A N I**, Judge:

¶1 Aundrae Harris ("Father") appeals, and Sara Schneider ("Mother") cross-appeals, from the superior court's post-judgment ruling modifying legal decision-making, parenting time, and child support. For reasons that follow, we vacate the child support order and remand for recalculation. We affirm in all other respects.

## FACTS AND PROCEDURAL BACKGROUND

¶2 Mother and Father have one child together ("Child"), born in September 2017. When Child was one year old, Mother petitioned to establish legal decision-making, parenting time, and related issues, which led to a judgment based on the parties' agreement awarding joint legal decision-making, giving Father multiple afternoons of parenting time each week (to increase to every other weekend as Child got older), and no child support beyond sharing daycare expenses.

¶3 Mother later petitioned to amend the judgment, alleging domestic violence by Father and ultimately seeking sole legal decision-making, supervised parenting time for Father, and a new child support order. Meanwhile, Father petitioned to enforce the existing parenting time order, leading to an agreed resolution as part of a temporary orders ruling.

¶4 Around the same time, a court-appointed advisor ("CAA") investigated the matter to make recommendations about Child's best interests. Although questioning both parents' communication and co-parenting track record, the CAA specifically noted Father's violence against Mother and recommended he complete services before beginning overnight visits with Child.

¶5 After an evidentiary hearing, the superior court issued a March 2021 modification judgment, finding grounds to modify the existing judgment based largely on Father's January 2020 domestic violence assault on Mother during a parenting exchange. The court awarded Mother sole legal decision-making, finding that Father had committed domestic

violence against her and had not rebutted the resulting statutory presumption against joint legal decision-making. The court designated Mother as Child's primary residential parent and granted Father parenting time two afternoons each week and every Saturday from morning to evening. Consistent with the CAA's recommendation, the court ordered Father to complete an anger management assessment plus all recommended follow-up, a 52-session domestic violence course, and at least six months of individual counseling, after which he would resume overnight parenting time from Friday afternoon into his existing Saturday time. The court entered a child support order for Father to pay $652 in current support monthly, plus past support from the date of Mother's petition.

¶6        Thereafter, Mother and Father continued to struggle with co-parenting and effective communication, leading to multiple enforcement actions and multiple protective order proceedings between the two.

¶7        In November 2023, Father petitioned to modify, alleging that Mother had abused her legal decision-making authority to block his relationship with Child, harassed him, and made false police reports against him, all to Child's detriment. He sought sole legal decision-making and for Mother to exercise only supervised parenting time. Mother responded and filed a cross-petition to modify, proposing supervised parenting for Father. She also sought enforcement of the existing child support order.

¶8        The court set an evidentiary hearing on the matter for late March 2024. Just three weeks before the hearing, Father's attorney withdrew from representation without Father's consent, citing "a severe breakdown in the attorney–client relationship." The court denied Father's self-represented motions to continue the evidentiary hearing, but during the hearing granted a continuance on an oral motion by Father's newly retained attorney over Mother's objection. The court authorized Mother to apply for attorney's fees related to preparation for and attendance at the March hearing. After full briefing on this limited fees issue, and noting that Father "was well aware of the evidentiary setting and associated deadlines" despite his former counsel's withdrawal, the court awarded Mother $4,500 (of more than $8,000 requested). The court then signed the attorney's fee award and included finality language, citing Rule 78(c) of the Arizona Rules of Family Law Procedure.

¶9        Meanwhile, the court appointed the same CAA to investigate and make recommendations about Child's best interests. The CAA again

observed that both parties' "co-parenting relationship and communication has been chaotic and self-serving," and she expressed concern that each parent appeared more focused on gaining the upper hand rather than being guided by Child's best interests. Observing that Father had completed a wide array of parenting classes and domestic violence services, this time the CAA expressed more concern about Mother's lack of truthfulness and apparent pattern of false statements about Father. Opining that "Mother having Sole Legal Decision-Making and being the Primary Residential Parent has not worked for the parties or [Child]," the CAA recommended awarding joint legal decision-making to encourage "more thoughtfulness and accountability . . . versus random decisions" and a gradual transition to an equal parenting time schedule.

¶10 After an evidentiary hearing at which Father, Mother, and the CAA testified, the superior court made comprehensive best-interests findings and entered modified parenting orders reflected in a final judgment entered in December 2024. Although acknowledging the parents' difficulties with each other, the court found that each was a "very capable" parent with a safe, nurturing, and healthy relationship with Child. The court awarded them joint legal decision-making (ordering "each parent [to] give good faith consideration to the views of the other and put forth best efforts to reach a consensus decision," and giving Father final say over educational issues and Mother final say over religion, extracurriculars, and medical issues), gave Father parenting time the first three weekends of each month, and ordered Father to pay Mother $478 monthly in current child support. The court denied each party's request for an award of attorney's fees. As to Mother's request for child support enforcement, the court referred the matter to the family law enforcement court for an updated arrearage calculation.

¶11 Father timely appealed the modification judgment and concurrently filed a motion for reconsideration. Mother timely moved to alter or amend. The superior court denied both motions, and Mother timely cross-appealed. We have jurisdiction under A.R.S. § 12-2101(A)(2).

## DISCUSSION

¶12 Father and Mother challenge various facets of the judgment: the existence of changed circumstances warranting modification (Mother); the court's assessment of evidence bearing on best interests (primarily Father); the court's domestic-violence findings (both Father and Mother); the award of joint legal decision-making and allocation of final say authority (primarily Mother); the amount of parenting time (Father); the

child support order (Father); and an attorney's fees award (Father).[1] We review the court's rulings for an abuse of discretion with deference to the court's factual findings, but we consider de novo any questions of law. *See Pridgeon v. Superior Court*, 134 Ariz. 177, 179 (1982) (change of circumstances); *Nold v. Nold*, 232 Ariz. 270, 273, ¶ 11 (App. 2013) (best-interests findings); *Hurd v. Hurd*, 223 Ariz. 48, 52, ¶ 16 (App. 2009) (credibility assessments and weighing evidence); *DeLuna v. Petitto*, 247 Ariz. 420, 423, ¶ 9 (App. 2019) (legal decision-making and parenting time); *Nia v. Nia*, 242 Ariz. 419, 422, ¶ 7 (App. 2017) (child support); *Murray v. Murray*, 239 Ariz. 174, 179, ¶ 20 (App. 2016) (attorney's fees). We address each contention in turn.

## I.    Changed Circumstances.

**¶13**        The superior court is authorized to modify existing decision-making and parenting orders when a material change of circumstances affecting the child's welfare has since occurred. *See Backstrand v. Backstrand*, 250 Ariz. 339, 343, ¶ 14 (App. 2020). Mother asserts that the court lacked a basis for modification here because it was her salutary decisions as the sole legal decision-maker that led Child to have a positive relationship with both parents and become smart, healthy, and well-adjusted, as the court found. Even though she denied grounds for modification by the time of trial, Mother arguably conceded that a material change in circumstances warranted revisiting the parenting orders by affirmatively seeking to modify Father's parenting time.

**¶14**        Moreover, although the court did not make an express change-of-circumstances finding, its findings show close consideration of changes since the last parenting order. For example, the court considered and assessed Father's post-ruling efforts to acknowledge and address his prior domestic violence against Mother, which had a direct bearing on availability and viability of joint legal decision-making. *See* A.R.S. § 25-403.03(D)–(E); *see also* A.R.S. § 25-103(B)(2) (policy preference for shared

---

[1]        Mother also urges that Father waived all arguments on appeal by failing to cite legal authorities or relevant record documents as required by ARCAP 13(a)(7)(A). Although largely lacking record and legal citations, Father's opening brief adequately explained his claims of error. *Cf. In re Aubuchon*, 233 Ariz. 62, 64–65, ¶ 6 (2013) (deeming waived only those arguments the court is unable to "discern and address"). Accordingly, and because the issues bear on Child's best interests, *cf. Hays v. Gama*, 205 Ariz. 99, 102–03 (2003), we decline to find Father's arguments waived.

decision-making consistent with the child's best interests). Although Mother may disagree, the record supports the court's decision.

## II.     Parenting Orders.

### A.     Best-Interests Findings.

¶15        Arizona courts determine legal decision-making and parenting time "in accordance with the best interests of the child." A.R.S. § 25-403(A). To do so, the court must consider all relevant factors bearing on the child's well-being. *See, e.g.*, A.R.S. §§ 25-403(A)(1)–(11), -403.01(B)(1)–(4). In contested cases, the court must make express findings "about all relevant factors and the reasons for which the decision is in the best interests of the child." A.R.S. § 25-403(B).

¶16        The court here made findings on all the §§ 25-403 and -403.01 factors. Father argues, however, that the superior court wrongly ignored what he characterizes as Mother's harassment and misrepresentations designed to malign or discredit him. He presented police records (generally prompted by his own reports) reflecting investigation of false statements and harassment, but Mother presented countervailing evidence that no charges were filed against her. The superior court weighed the parties' conflicting accounts in its consideration of the best interest factors, and we do not re-weigh the evidence on appeal. *See Hurd*, 223 Ariz. at 52, ¶ 16.

¶17        Father also asserts that the court arbitrarily and improperly departed from the CAA's factual assessment and recommendations, which he characterizes as a due process violation. But the superior court "can neither delegate a judicial decision to an expert witness nor abdicate its responsibility to exercise independent judgment." *DePasquale v. Superior Court*, 181 Ariz. 333, 336 (App. 1995). While the court could (and did) consider the CAA's report and recommendations, the court had to make its own findings and conduct its own best-interests assessment. *Christopher K. v. Markaa S.*, 233 Ariz. 297, 301, ¶ 20 (App. 2013). Father thus has not shown error.

¶18        Mother argues that Father threatened her under his breath during trial. This incident was not raised with the superior court and is not reflected in the record on appeal, so it provides no basis to challenge the superior court's ruling. And both Mother and Father cite the other's conduct after the modification ruling, which likewise cannot show error in the ruling itself.

### B.  Domestic Violence Findings.

**¶19**　　　Among the factors bearing on best interests, the court must consider "[w]hether there has been domestic violence or child abuse pursuant to § 25-403.03."  A.R.S. § 25-403(A)(8).  Section 25-403.03, in turn, creates an array of prohibitions and presumptions applicable to legal decision-making and parenting time when the court finds various types or degrees of domestic violence by one or both parents.  *See, e.g.*, A.R.S. § 25-403.03(A)–(B), (D)–(E), (F).

**¶20**　　　First, the statute flatly prohibits an award of joint legal decision-making if the court finds "significant" domestic violence as defined in § 13-3601 or a "significant history" of domestic violence.  A.R.S. § 25-403.03(A).  Otherwise, if the court finds one parent committed "an act" of domestic violence against the other, the statute imposes a rebuttable presumption that awarding legal decision-making to the perpetrator is contrary to the child's best interests; no presumption applies if each parent has committed domestic violence against the other.  A.R.S. § 25-403.03(D) (qualifying acts and presumption), (E) (rebutting the presumption).  A parent found to have committed an act of domestic violence must prove that granting parenting time will not endanger the child, and the court may impose conditions on any parenting time awarded as necessary to protect the child and the other parent.  A.R.S. § 25-403.03(F).

**¶21**　　　In all cases, the court must consider domestic violence to be against a child's best interests and place "primary importance" on the victim's and child's safety.  A.R.S. § 25-403.03(B).  And as with any best-interests factor relevant to a contested case, the court must make findings about the existence of domestic violence and whether the statutory presumption has been rebutted.  *Olesen v. Daniel*, 251 Ariz. 25, 29, ¶ 17 (App. 2021); *see also In re Marriage of Diezsi*, 201 Ariz. 524, 526, ¶ 5 (App. 2002) (findings required whether granting or denying petition).

**¶22**　　　Here, the superior court found that Father had committed domestic violence against Mother, but that his actions did not fall into the category of "significant" or "significant history" for purposes of the § 25-403.03(A) prohibition of joint legal decision-making.  The court further found that the § 25-403.03(D) presumption against awarding Father decision-making authority applied because Father had committed an act of domestic violence and Mother had not, but that Father had rebutted the presumption through his subsequent recognition of the impact of his actions and his efforts (domestic-violence treatment, anger management, and parenting education) to address it.  The court directed that parenting

exchanges occur at a police station and that Father communicate with Mother only by electronic means to protect against further harm.

¶23 Mother argues that the superior court ignored undisputed evidence of additional acts of domestic violence Father committed against her after the previous parenting orders went into effect. In her view, the court thus erred by declining to find a "significant history" of domestic violence under § 25-403.03(A). But the only domestic violence allegations in Mother's pretrial statement were Father's actions *before* the previous (March 2021) parenting order, and Mother did not present evidence of subsequent domestic violence at trial. The court considered those actions when crafting the March 2021 judgment, which likewise did not find "significant" domestic violence or a "significant history" of domestic violence but awarded Mother sole legal decision-making based on Father's failure to rebut the § 25-403.03(D) presumption. Mother has not shown error in this regard.

¶24 For his part, Father asserts that the superior court improperly ignored his allegations of domestic violence by Mother, specifically flagging her alleged false reports to law enforcement and violation of a protective order. But Father did not raise these issues as "domestic violence" in superior court, instead suggesting they showed Mother's lack of credibility and evidenced her intent to block Father from Child's life. And Father specifically asked that the parties be awarded joint legal decision-making, which is logically inconsistent with an allegation of domestic violence by Mother. *See* A.R.S. § 25-403.03(A), (D). Although some of the underlying facts could qualify as domestic violence under certain circumstances, *see, e.g.*, A.R.S. § 25-403.03(D)(3), Father did not allege or show them as such, so the court did not err by failing to address them in that light.

### C.  Legal Decision-Making.

¶25 In contested cases, the superior court must "make specific findings on the record about all relevant factors and the reasons for which the decision is in the best interests of the child." A.R.S. § 25-403(B). Here, Mother argues that the court failed to adequately explain its rationale for awarding joint legal decision-making, asserting that the parents' track record of issues communicating and co-parenting undermines the ruling. The court acknowledged the interpersonal conflict driven by both parents' past bad behavior. But it also heard evidence that Father had pursued parenting education to develop better communication skills. And it received evidence that, at least to some degree, sole decision-making (e.g.,

Mother's unilateral decisions in choosing and changing Child's school) proved a flashpoint for the parents' conflict. Even if the court could have reached a different conclusion, the record supports its findings that both Father and Mother are capable parents and are capable of interacting appropriately to serve Child's interests.

**¶26** Mother also asserts that the superior court erred by giving Father final say over educational decisions, noting that Father has only weekend parenting time and is thus less affected by the location of Child's school. Location, of course, is not the only consideration in educational decisions. But even if it were, Father (who volunteers regularly in Child's classroom) testified that he would prioritize finding, in consultation with Mother, a school that meets Child's needs and is most convenient for all involved. The superior court thus did not abuse its discretion in allocating final say authority.[2]

### D. Parenting Time.

**¶27** Father asserts that the court erred by declining to adopt the CAA's recommendation of equal parenting time. But as previously noted, the court *cannot* delegate the decision to the CAA and is not bound by the CAA's recommendations. *See DePasquale*, 181 Ariz. at 336. Apart from the fact that the CAA made a different recommendation, Father offers no legal basis to displace the court's determination that granting Father parenting time for the first three weekends of each month is in Child's best interests.

## III. Child Support.

**¶28** Father next challenges the superior court's order that he pay Mother $478 per month in current support. Although he asserts that the court used outdated income information, the court calculated child support using the data to which the parties testified at trial.

**¶29** As Father points out, however, the court transposed the parties' roles on the child support worksheet, completing it as though Father were the primary residential parent and Mother owed him child

---

[2] In his reply/cross-answering brief, Father raises new contentions that he should be awarded sole legal decision-making or, alternatively, final say over medical and extracurricular decisions as well. Father waived these requests to enlarge his rights by failing to raise them until his reply brief. *See In re Marriage of Pownall*, 197 Ariz. 577, 583 n.5 (App. 2000); *see also* ARCAP 13(c) (reply brief "must be strictly confined to rebuttal of points made in the appellee's answering brief").

support.  The court also omitted the mandatory parenting time adjustment for Father's allotted parenting time days.  *See* A.R.S. § 25-320 app. ("Guidelines") § V.  Accordingly, we vacate the child support order and remand for a corrected calculation and order.

## IV.    Attorney's Fees.

**¶30**        Finally, Father asserts that the superior court erred when, after Father's attorney withdrew just weeks before trial, the court sanctioned Father for that attorney's failure to submit exhibits timely.[3] Father did not raise this issue in his opening brief and has thus waived it. *See In re Marriage of Pownall*, 197 Ariz. at 583 n.5.  Moreover, the record shows that the court designed the limited attorney's fee award (presumably the sanction at issue) not to penalize Father, but rather to compensate Mother for the time and expense of preparing for a trial that the court continued at Father's request and over Mother's objection.  Waiver aside, we discern no error.

---

[3]        The superior court signed the fee award and designated it as an ostensibly final judgment under Rule 78(c).  This fee award, which ruled on one subset of Mother's claim for attorney's fees while the modification proceedings remained ongoing, did not resolve "all claims, issues, and parties" as necessary to qualify as a final judgment on this basis. *See* Ariz. R. Fam. Law P. 78(c).  Despite the reference to Rule 78(c), the ruling thus was not (at that time) substantively final or immediately appealable. *Cf. Madrid v. Avalon Care Ctr.-Chandler, L.L.C.*, 236 Ariz. 221, 224–25, ¶¶ 6, 11 (App. 2014) (in analogous civil context, noting that including Ariz. R. Civ. P. 54(c) language when claims remain pending is inaccurate).  The court also did not include the requisite determination or certification for entry of judgment under Rule 78(b).  Accordingly, we have jurisdiction to consider this issue as part of Father's appeal from the final modification judgment.

## CONCLUSION

¶**31** We vacate the child support order and remand for recalculation. In all other respects, we affirm.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**: JR